# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

**THOMAS E. PEREZ, Secretary of the United States Department of Labor,**

        Plaintiff,

      **-vs-**

**VERONICA MUELLER, ROGER MUELLER, ALPHA CONSULTING GROUP, LLC, THE CAREY V. MUELLER (n/k/a VOLLMERS) 1996 TRUST DATED 11/14/96, THE CRAIG M. MUELLER 1996 TRUST DATED 11/14/96, THE CHRISTOPHER L. MUELLER 1996 TRUST DATED 11/14/96, THE ROGER L. AND VERONICA S. MUELLER 1996 EXEMPTION TRUST DATED 11/14/96 f/b/o/ CAREY V. MUELLER (n/k/a VOLLMERS), THE ROGER L. AND VERONICA S. MUELLER 1996 EXEMPTION TRUST DATED 11/14/96 f/b/o CRAIG M. MUELLER, THE ROGER L. AND VERONICA S. MUELLER 1996 EXEMPTION TRUST DATED 11/14/96 f/b/o CHRISTOPHER L. MUELLER, and THE OMNI RESOURCES Inc. EMPLOYEE STOCK OWNERSHIP PLAN,**

        Defendants.

**Case No. 13-C-1302**

---

## DECISION AND ORDER

---

This is an action brought by the Secretary of Labor alleging violations of ERISA in relation to an Employee Stock Ownership Plan sponsored by Omni Resources, Inc. The alleged violations arise from the ESOP's December 30, 2008 purchase of company stock for more than fair market value and without a proper

valuation. All of the defendants (save for Alpha Investment Consulting Group LLC)[1] move to dismiss for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). The Court accepts the following, well-pleaded allegations as true for purposes of this motion. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

Omni Resources is a full-service provider of information technology ("IT") staff augmentation, contract-to-hire, permanent placement, and outsourcing solutions. At all relevant times, Veronica and Roger Mueller were Omni officers and members of its board of directors. Prior to the ESOP stock purchase, Veronica Mueller owned 40% of the 50,500 outstanding shares of Omni common stock. The rest of the shares were held in a series of trusts for the benefit of the Muellers' children (collectively, the Defendant Trusts). Veronica Mueller also owned all 500 of the outstanding voting shares.

In early 2008, the Muellers began exploring options for the sale of Omni Resources. They spoke to a number of brokers about selling Omni but received no offers. The Muellers then decided to sell the company to an ESOP, and upon the recommendation of their attorney, Omni engaged the services of Enterprise Services, Inc. ("ESI") to perform an appraisal of Omni stock for that purpose. The Muellers did not interview any other valuation firms, and they signed an engagement letter with ESI

---

[1] The Omni ESOP is joined by the Secretary as a party Defendant to assure that complete relief can be granted. Fed. R. Civ. P. 19(a).

on April 17, 2008.

Pursuant to the engagement letter, ESI provided a written valuation report dated August 14, 2008 (the August Valuation). The August Valuation opined that the fair market value of 100% of the outstanding shares was $13,770,000 or $272.67 per share. The cover letter stated that "[e]arnings prospects can change, as can the general economic climate and other relevant factors."

Over four months passed before the actual ESOP stock purchase. On December 5, Veronica Mueller signed an engagement letter with Alpha Investment. In the engagement letter, Alpha agreed to provide "certain financial analysis, consulting and other independent fiduciary services (see Schedule A)." Schedule A stated:

> [Alpha] will review proposed leverage buyout by the Omni Resources, Inc. Employee Stock Ownership Plan within the context of plan documents and plan operations in order to determine whether purchase of shares of company stock by the ESOP is appropriate under the circumstances and in the best interests of the plan participants. If [Alpha] concludes that such investment is appropriate and that the purchase price[] is for no more than adequate consideration, [Alpha] will then direct the Trustees of the ESOP to execute the transaction and will take such other steps as are reasonably required by [Omni Resources] to facilitate the proposed investment.

A separate letter agreement explained that ESI had been retained to "act as an independent financial advisor" to the ESOP in connection with a transaction anticipated to occur "on or before 12/31/08." ESI's total charge for the appraisal was $2,000 plus out-of-pocket expenses.

The ESOP purchased 100% of the Omni shares in a two-step process. First,

Omni Resources purchased all outstanding shares from Veronica Mueller and the Defendant Trusts. Then, Omni Resources immediately sold the shares to the ESOP. Omni made an initial payment of $5,000 and financed the remaining amount through a promissory note to the sellers. In a mirror transaction, the ESOP then paid $5,000 to Omni and signed a promissory note to Omni with identical terms to the note signed by Omni to the sellers.

The Secretary alleges that the August Valuation was flawed and unreliable. Moreover, as the purchase took place four months after the August Valuation, the purchase price wasn't based upon up-to-date information in any event. In a letter delivered just prior to the stock purchase, ESI included "interim financial statements available for the eleven month period ending November 30, 2008" which stated that Omni's actual revenues were substantially lower than the projections used for the August Valuation. Despite a dramatic difference between the August Valuation and Omni's actual performance, ESI ignored the numbers, stating that it was "not aware of any material information that would have us change the value previously developed in the August 14, 2008 report." According to the Secretary, Alpha Investment and the Muellers should have reviewed this letter "prudently and solely with the interests of the ESOP's participants in mind," accepting the value only if doing so was "consistent with their fiduciary duties of loyalty and prudence." The Secretary also alleges that the ERISA fiduciaries should have rejected the addition of a 15% control premium to the stock price paid by the ESOP.

To survive a motion to dismiss, the complaint need only contain a short and plain statement showing that the plaintiff is entitled to relief. *EEOC v. Concentra Health Serv., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). The complaint must contain "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When a complaint's allegations do not "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level," it should be dismissed. *Concentra* at 776; *see also Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("when the complaint contains well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief").

First, the moving defendants argue that the complaint is untimely. The limitations period for the Secretary's claims is the earlier of

> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or

> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113, ERISA § 413. The ESOP transaction occurred on December 30, 2008. The defendants argue that under § 413(2), the Secretary had actual knowledge of the violation no later than July 20, 2010. The defendants submit a series of letters to

that effect, arguing that they are entitled to do so because the letters are "referenced in the pleading" and "central to the claim[s]." *Citadel Group Ltd. v. Wash. Reg. Med. Ctr.*, 692 F.3d 580, 591 (7th Cir. 2012). Even if that latter assertion is true, the moving defendants all signed agreements tolling the limitations period for one full year. Response to Motion to Dismiss, Ex. 1-3. Assuming, as the defendants argue, that the limitations period began running on July 20, 2010, the Secretary's November 18, 2013 complaint is not untimely by virtue of the tolling agreements.

Defendants argue that the tolling agreements are ineffective because § 413 is a statute of repose that cannot be waived or tolled. This is only partly true. As one court explained, the six-year provision in § 413(1) is a statute of repose, but § 413(2) is "a statute of limitations that may be tolled by agreement." *Harris v. Bruister*, No. 4:10cv77-DPJ-FKB, 2013 WL 6805155, at *5-6 (S.D. Miss. Dec. 20, 2013). In other words, the only way the statute of repose would be relevant is if the lawsuit was filed more than six years after the alleged violation. *Radford v. Gen. Dynamics Corp.*, 151 F.3d 396, 400 (5th Cir. 1998) ("Section 413 of ERISA is a statute of repose, establishing an outside limit of six years in which to file suit, and tolling does not apply"). The three-year period in § 413(2) can be extended up to six-years, but no further (except in the case of fraud or concealment). There is nothing procedurally improper about bringing the tolling agreements to the Court's attention in opposition to a motion to dismiss. *Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) ("a party opposing a Rule 12(b)(6) motion may submit materials outside the pleadings

to illustrate the facts the party expects to be able to prove" for "illustrative purposes" without converting the motion into a Rule 56 motion); *FDIC v. Elmore*, No. 13 C 1767, 2013 WL 6185236, at *3 (N.D. Ill. Nov. 22, 2013) (court "may take notice of the tolling agreement for the purpose of determining that the allegations of the Complaint itself do not set forth everything necessary to satisfy Defendants' affirmative statute of limitations defense").

Next, the moving defendants attempt to demonstrate that the complaint fails to state any actionable claims. For example, the defendants argue that the complaint fails to plausibly allege that the Defendant Trusts "knowingly participated in a fiduciary's breach of a substantive provision of ERISA." *Daniels v. Bursey*, 313 F. Supp. 2d 790, 808 (N.D. Ill. 2004) (discussing *Harris Trust v. Solomon Smith Barney, Inc.*, 530 U.S. 238 (2000)). The complaint alleges at paragraph 53 that the Defendant Trusts were knowing participants, but this perfunctory, "threadbare recital[] of the elements of a cause of action," *Iqbal*, 556 U.S. at 678, is not what transforms the Secretary's allegations into an actionable claim. The Defendant Trusts were created for the benefit of the Muellers' own children, and it takes little imagination to deduce that they were knowing participants in the Muellers' scheme. At minimum, such participation has been plausibly alleged by the Secretary.

The moving defendants also argue that they cannot be subject to equitable relief because they themselves did not receive any assets from the Omni ESOP. Defendants cite *Neil v. Zell*, No. 08 C 6833, 2010 WL 3167293 (N.D. Ill. Aug. 9,

2010), a case brought by participants in the Tribune Company ESOP claiming the ESOP's entitlement to "funds that must be repaid to Tribune because Tribune's stock is the ESOP's sole asset." The court dismissed this claim, reasoning that it could not order relief that would involve "repayment of funds that originated with Tribune" because Tribune was not a party to the case. *Id.* at *3. Here, the Secretary is suing on behalf of the ESOP, which was made a party to this case by the Secretary's joinder under Rule 19. Complaint, Prayer for Relief, ¶ 1 (requesting an Order requiring "each of the fiduciary defendants jointly and severally to restore all losses caused to the Plan as a result of their fiduciary breaches . . .").

Contrary to the defendants' arguments herein, this is not an action for legal relief — i.e., the "imposition of personal liability" for "benefits . . . conferred" by the Omni ESOP upon the defendants. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 214 (2002). Instead, it is an action seeking the return of "money or property identified as belonging in good conscience" to the Omni ESOP. *Id.* at 213. It is, at least partly, an action for equitable restitution, and the Secretary plausibly alleges that the Omni ESOP's losses can and should be restored by funds that can "clearly be traced to particular funds or property in the defendant's possession." *Id.*; *see also Mondry v. Am. Fam. Mut. Ins. Co.*, 557 F.3d 781, 806 (7th Cir. 2009) ("restitution is equitable when it is sought by a person complaining of a breach of trust . . .").

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

1.      The defendants' motion to dismiss [ECF No. 25] is **DENIED**;

2.      Pursuant to Federal Rule of Civil Procedure 16(b), a telephonic scheduling conference is scheduled for **July 16, 2014** at **11:30 a.m.** (Central Time). Please be available at that time.  The Court will initiate the call.

3.      The purpose of the conference call is to establish a scheduling order which will limit the time: (a) to join other parties and to amend the pleadings; (b) to file motions; (c) to complete discovery;

4.      The scheduling order may also: (a) modify the timing for disclosure under Rules 26(a) and 26(e)(1) and of the extent of discovery to be permitted; (b) provide for the disclosure or discovery of electronically stored information; (c) include any agreements the parties reach for asserting claims of privilege or protection as trial preparation material after information is produced; (d) the date or dates for conferences before trial, a final pretrial conference, and trial; and (e) any other matters appropriate in the circumstances of the case;

5.      The time limitations set forth in the scheduling order may only be modified for good cause and with the Court's consent.  Fed. R. Civ. P. 16(b)(4);

6.      The parties should be prepared to discuss the matters listed in Civil Local Rule 16(a)(1).  Please refer to Attachment A.  Special attention should also be given to Rule 26(f)(1), which requires the parties to conduct a settlement/discovery

conference at least twenty-one (21) days prior to the initial scheduling conference described above. The Rule 26(f) conference may be conducted by telephone. Rules 26(f)(2) and (3) mandate that the parties, within fourteen (14) days of their conference: (a) file a written report outlining the proposed discovery plan they have developed at their Rule 26(f) conference; and (b) make the required initial disclosures under Rule 26(a) regarding witnesses and documents. In addition to the matters specified in Rules 26(f)(2) and (3), the Court requests that the proposed discovery plan submitted by the parties include one or two sentences stating the nature of the case;

7.     The written report must include the telephone numbers where the parties can be reached for this call.

8.     In addition, Judge Randa is participating in the Seventh Circuit Electronic Discovery Pilot Program and has adopted the <u>Principles Relating to the Discovery of Electronically Stored Information</u>. Counsel should be fully prepared to discuss methods and techniques to accomplish cooperative fact-finding in their case at the initial status conference. Before the initial status conference, counsel must also meet and discuss the Principles Relating to the Discovery of Electronically Stored Information. At the initial status conference, counsel must be prepared to discuss what agreements they have reached regarding discovery of Electronically Stored Information ("ESI") and what area of disagreement they have with regard to discovery of ESI. After discussing the matter with counsel, the Court will determine whether to enter the <u>Standing Order Relating to the Discovery of Electronically Stored</u>

Information in their particular case.  (Please refer to Attachments B & C).

Dated at Milwaukee, Wisconsin, this 19th day of May, 2014.

BY THE COURT:

HON. RUDOLPH T. RANDA
U.S. District Judge

**Civil L. R. 16. Pretrial Conferences; Scheduling; Management; Alternative Dispute Resolution.**

    **(a) Preliminary Pretrial Conferences.**

        **(1)**    A judge may require the parties to appear to consider the future conduct of the case.  The parties must be prepared to discuss the matters enumerated in Fed. R. Civ. P. 16 and Fed. R. Civ. P. 26(f).  The parties also should be prepared to state:

            **(A)**    the nature of the case in 1 or 2 sentences;

            **(B)**    any contemplated motions;

            **(C)**    the parties' discovery plan, including the amount of further discovery each party contemplates, the approximate time for completion of discovery, and any disputes regarding discovery;

            **(D)**    whether the parties anticipate the disclosure or discovery of electronically stored information;

            **(E)**    whether the parties have reached an agreement for asserting post-production claims of privilege or of protection as trial-preparation material, and whether the parties request the judge to enter an order including the agreement;

            **(F)**    whether settlement discussions have occurred;

            **(G)**    the basis for the Court's subject matter jurisdiction; and

            **(H)**    such other matters as may affect further scheduling of the case for final disposition.

## CONSIDERATION OF ISSUES CONCERNING
## ELECTRONICALLY STORED INFORMATION ("ESI")

Experience teaches that unless conducted with careful planning and a spirit of cooperation, discovery of ESI can result in an unnecessarily high level of conflict, expense and delay in resolving cases on the merits.  That is why the Court has endorsed The Sedona Conference® Cooperation Proclamation dated July 2008.

To further advance the goal of having parties conduct discovery of ESI in a cooperative and cost-effective manner, this Court has adopted the Standing Order Relating to the Discovery of Electronically Stored Information.  At the Rule 26(f) planning conference, the parties shall address the issues discussed in the Standing Order, including but not limited to those set forth in Section 2.01(a)(1)-(5).  In the report of the planning conference, the parties shall set forth:

(a) Whether they anticipate discovery of ESI in the case;

(b) What agreements they have reached regarding discovery of ESI; and

(c) What areas of disagreement they have with regard to discovery of ESI.

After reviewing the report of the planning conference and discussing the matter with the parties, the Court will determine whether the Standing Order should apply in this case.

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

_____,

                    Plaintiff,

         vs.                                    Case No. _____

_____,

                    Defendant.

 

      This Court is participating in the Pilot Program initiated by the Seventh Circuit Electronic Discovery Committee.  Parties and counsel in the Pilot Program with civil cases pending in this Court shall familiarize themselves with, and comport themselves consistent with, that committee's Principles Relating to the Discovery of Electronically Stored Information.  For more information about the Pilot Program please see the web site of The Seventh Circuit Bar Association, www.7thcircuitbar.org.  If any party believes that there is good cause why a particular case should be exempted, in whole or in part, from the Principles Relating to the Discovery of Electronically Stored Information, then that party may raise such reason with the Court.

 

### *General Principles*
### Principle 1.01 (Purpose)

      The purpose of these Principles is to assist courts in the administration of Federal Rule of Civil Procedure 1, to secure the just, speedy, and inexpensive determination of every civil case, and to promote, whenever possible, the early resolution of disputes regarding the discovery of electronically stored information ("ESI") without Court intervention. Understanding of the feasibility, reasonableness, costs, and benefits of various aspects of electronic discovery will inevitably evolve as judges, attorneys and parties to litigation gain more experience with ESI and as technology advances.

 

Attachment C

**Principle 1.02 (Cooperation)**

An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner. The failure of counsel or the parties to litigation to cooperate in facilitating and reasonably limiting discovery requests and responses raises litigation costs and contributes to the risk of sanctions.

**Principle 1.03 (Discovery Proportionality)**

The proportionality standard set forth in Fed. R. Civ. P. 26(b)(2)(C) should be applied in each case when formulating a discovery plan. To further the application of the proportionality standard in discovery, requests for production of ESI and related responses should be reasonably targeted, clear, and as specific as practicable.

*Early Case Assessment Principles*

**Principle 2.01 (Duty to Meet and Confer on Discovery and to Identify Disputes for Early Resolution)**

(a)      Prior to the initial status conference with the Court, counsel shall meet and discuss the application of the discovery process set forth in the Federal Rules of Civil Procedure and these Principles to their specific case. Among the issues to be discussed are:

(1)      the identification of relevant and discoverable ESI and documents, including methods for identifying an initial subset of sources of ESI and documents that are most likely to contain the relevant and discoverable information as well as methodologies for culling the relevant and discoverable ESI and documents from that initial subset (see Principle 2.05);

(2)      the scope of discoverable ESI and documents to be preserved by the parties;

(3)      the formats for preservation and production of ESI and documents;

(4)      the potential for conducting discovery in phases or stages as a method for reducing costs and burden; and

(5)      the potential need for a protective order and any procedures to which the parties might agree for handling inadvertent production of privileged

Attachment C

information and other privilege waiver issues pursuant to Rule 502(d) or (e) of the Federal Rules of Evidence.

(b)     Disputes regarding ESI that counsel for the parties are unable to resolve shall be presented to the Court at the initial status conference, Fed. R. Civ. P. Rule 16(b) Scheduling Conference, or as soon as possible thereafter.

(c)     The attorneys for each party shall review and understand how their client's data is stored and retrieved before the meet and confer discussions in order to determine what issues must be addressed during the meet and confer discussions.

(d)     If the Court determines that any counsel or party in a case has failed to cooperate and participate in good faith in the meet and confer process or is impeding the purpose of these Principles, the Court may require additional discussions prior to the commencement of discovery, and may impose sanctions, if appropriate.

**Principle 2.02 (E-Discovery Liaison(s))**

In most cases, the meet and confer process will be aided by participation of an e-discovery liaison(s) as defined in this Principle.  In the event of a dispute concerning the preservation or production of ESI, each party shall designate an individual(s) to act as e-discovery liaison(s) for purposes of meeting, conferring, and attending court hearings on the subject. Regardless of whether the e-discovery liaison(s) is an attorney (in-house or outside counsel), a third party consultant, or an employee of the party, the e-discovery liaison(s) must:

(a)     be prepared to participate in e-discovery dispute resolution;

(b)     be knowledgeable about the party's e-discovery efforts;

(c)     be, or have reasonable access to those who are, familiar with the party's electronic systems and capabilities in order to explain those systems and answer relevant questions; and

(d)     be, or have reasonable access to those who are, knowledgeable about the technical aspects of e-discovery, including electronic document storage, organization, and format issues, and relevant information retrieval technology, including search methodology.

**Principle 2.03 (Preservation Requests and Orders)**

(a)     Appropriate preservation requests and preservation orders further the goals of these Principles. Vague and overly broad preservation requests do not further the goals of these Principles

and are therefore disfavored. Vague and overly broad preservation orders should not be sought or entered. The information sought to be preserved through the use of a preservation letter request or order should be reasonable in scope and mindful of the factors set forth in Rule 26(b)(2)(C).

(b)     To the extent counsel or a party requests preservation of ESI through the use of a preservation letter, such requests should attempt to ensure the preservation of relevant and discoverable information and to facilitate cooperation between requesting and receiving counsel and parties by transmitting specific and useful information. Examples of such specific and useful information include, but are not limited to:

(1)     names of the parties;

(2)     factual background of the potential legal claim(s) and identification of potential cause(s) of action;

(3)     names of potential witnesses and other people reasonably anticipated to have relevant evidence;

(4)     relevant time period; and

(5)     other information that may assist the responding party in assessing what information to preserve.

(c)     If the recipient of a preservation request chooses to respond, that response should provide the requesting counsel or party with useful information regarding the preservation efforts undertaken by the responding party. Examples of such useful and specific information include, but are not limited to, information that:

(1)     identifies what information the responding party is willing to preserve and the steps being taken in response to the preservation letter;

(2)     identifies any disagreement(s) with the request to preserve; and

(3)     identifies any further preservation issues that were not raised.

(d)     Nothing in these Principles shall be construed as requiring the sending of a preservation request or requiring the sending of a response to such a request.

**Principle 2.04 (Scope of Preservation)**

(a)     Every party to litigation and its counsel are responsible for taking reasonable and proportionate steps to preserve relevant and discoverable ESI within its possession, custody or

Attachment C

control. Determining which steps are reasonable and proportionate in particular litigation is a fact specific inquiry that will vary from case to case. The parties and counsel should address preservation issues at the outset of a case, and should continue to address them as the case progresses and their understanding of the issues and the facts improves.

(b)     Discovery concerning the preservation and collection efforts of another party may be appropriate but, if used unadvisedly, can also contribute to the unnecessary expense and delay and may inappropriately implicate work product and attorney-client privileged matter. Accordingly, prior to initiating such discovery a party shall confer with the party from whom the information is sought concerning: (I) the specific need for such discovery, including its relevance to issues likely to arise in the litigation; and (ii) the suitability of alternative means for obtaining the information. Nothing herein exempts deponents on merits issues from answering questions concerning the preservation and collection of their documents, ESI, and tangible things.

(c)     The parties and counsel should come to the meet and confer conference prepared to discuss the claims and defenses in the case including specific issues, time frame, potential damages, and targeted discovery that each anticipates requesting. In addition, the parties and counsel should be prepared to discuss reasonably foreseeable preservation issues that relate directly to the information that the other party is seeking. The parties and counsel need not raise every conceivable issue that  may arise concerning their preservation efforts; however, the identification of any such preservation issues should be specific.

(d)     The following categories of ESI generally are not discoverable in most cases, and if any party intends to request the preservation or production of these categories, then that intention should be discussed at the meet and confer or as soon thereafter as practicable:

(1)     "deleted," "slack," "fragmented," or "unallocated" data on hard drives;

(2)     random access memory (RAM) or other ephemeral data;

(3)     on-line access data such as temporary internet files, history, cache, cookies, etc.;

(4)     data in metadata fields that are frequently updated automatically, such as last-opened dates;

   (5)  backup data that is substantially duplicative of data that is more accessible elsewhere; and

   (6)  other forms of ESI whose preservation requires extraordinary affirmative measures that are not utilized in the ordinary course of business.

 (e)  If there is a dispute concerning the scope of a party's preservation efforts, the parties or their counsel must meet and confer and fully explain their reasons for believing that additional efforts are, or are not, reasonable and proportionate, pursuant to Rule 26(b)(2)(C).  If the parties are unable to resolve a preservation issue, then the issue should be raised promptly with the Court.

**Principle 2.05 (Identification of Electronically Stored Information)**

 (a)  At the Rule 26(f) conference or as soon thereafter as possible, counsel or the parties shall discuss potential methodologies for identifying ESI for production.

 (b)  Topics for discussion may include, but are not limited to, any plans to:

   (1)  eliminate duplicative ESI and whether such elimination will occur only within each particular custodian's data set or whether it will occur across all custodians;

   (2)  filter data based on file type, date ranges, sender, receiver, custodian, search terms, or other similar parameters; and

   (3)  use keyword searching, mathematical or thesaurus-based topic or concept clustering, or other advanced culling technologies.

**Principle 2.06 (Production Format)**

 (a)  At the Rule 26(f) conference, counsel and the parties should make a good faith effort to agree on the format(s) for production of ESI (whether native or some other reasonably usable form).  If counsel or the parties are unable to resolve a production format issue, then the issue should be raised promptly with the Court.

 (b)  The parties should confer on whether ESI stored in a database or a database management system can be produced by querying the database for discoverable information, resulting in a report or a reasonably usable and exportable electronic file for review by the requesting counsel or party.

Attachment C

(c)      ESI and other tangible or hard copy documents that are not text-searchable need not be made text-searchable.

(d)      Generally, the requesting party is responsible for the incremental cost of creating its copy of requested information. Counsel or the parties are encouraged to discuss cost sharing for optical character recognition (OCR) or other upgrades of paper documents or non-text-searchable electronic images that may be contemplated by each party.

### *Education Provisions*

### Principle 3.01 (Judicial Expectations of Counsel)

Because discovery of ESI is being sought more frequently in civil litigation and the production and review of ESI can involve greater expense than discovery of paper documents, it is in the interest of justice that all judges, counsel and parties to litigation become familiar with the fundamentals of discovery of ESI. It is expected by the judges adopting these Principles that all counsel will have done the following in connection with each litigation matter in which they file an appearance:

(1)      Familiarize themselves with the electronic discovery provisions of Federal Rules of Civil Procedure, including Rules 26, 33, 34, 37, and 45, as well as any applicable State Rules of Procedure;

(2)      Familiarize themselves with the Advisory Committee Report on the 2006 Amendments to the Federal Rules of Civil Procedure, available at http://www.uscourts.gov/rules/EDiscovery_w_Notes.pdf; and

(3)      Familiarize themselves with these Principles.

### Principle 3.02 (Duty of Continuing Education)

Judges, attorneys and parties to litigation should continue to educate themselves on electronic discovery by consulting applicable case law, pertinent statutes, the Federal Rules of Civil Procedure, the Federal Rules of Evidence, The Sedona Conference® publications relating to

electronic discovery[1], additional materials available on web sites of the courts[2], and of other organizations [3] providing educational information regarding the discovery of ESI.[4]

ENTER:

Dated: _____     _____
                                    Hon. Rudolph T. Randa
                                    U.S. District Judge

---

[1] http://www.thesedonaconference.org/content/miscFiles/publications_html?grp=wgs110

[2] E.g. http://www.ilnd.uscourts.gov/home/

[3] E.g. http://www.7thcircuitbar.org, www.fjc.gov (under Educational Programs and Materials)

[4] E.g. http://www.du.edu/legalinstitute

Attachment C