# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**THOMAS E. PEREZ,**

        **Plaintiff,**

    v.                                            Case No. 13-CV-1302

**VERONICA MUELLER, et al.,**

        **Defendants.**

---

## DECISION AND ORDER ON THE DEFENDANTS' MOTIONS TO COMPEL

---

### I.    Procedural History

United States Secretary of Labor Thomas E. Perez filed the present action alleging that the defendants violated provisions of the Employee Retirement Income Security Act of 1974 (ERISA) with respect to actions they undertook regarding an employee stock ownership plan (ESOP) sponsored by Omni Resources, Inc. The Secretary alleges that the ESOP imprudently purchased company stock for more than the stock's fair market value and without a proper valuation of the stock. The defendants involved in the motions that are the subject of this order are Veronica Mueller, Roger Mueller, and six trusts, who will be referred to collectively as the Mueller defendants.

This matter was initially assigned to Magistrate Judge William E. Callahan. It was reassigned to the Honorable Rudolph T. Randa due to the lack of consent to proceed before a magistrate judge. Judge Randa presided over the case for the next 32 months. The case was reassigned to Judge Pamela Pepper after Judge Randa ceased presiding over cases due to what would prove to be a terminal illness.

Since at least April of 2016 the parties have been asking the court to resolve discovery disputes regarding whether certain information sought by the Mueller defendants from the Department of Labor and its employees is privileged. Judge Randa granted the Mueller defendants' initial motion to compel. (ECF No. 95.) That led to the Secretary filing a "motion to clarify" (ECF No. 100), which motion Judge Randa granted (ECF No. 112). The Mueller defendants' promptly sought relief from that order. (ECF No. 113.)

While the "motion to clarify" was pending, the Mueller defendants filed a motion to compel Department of Labor employee Charles Visconti to answer certain questions that he did not answer at his deposition on the basis of various privileges. (ECF No. 108.) The Mueller defendants also filed a second motion to compel discovery. (ECF No. 121.)

On September 26, 2016, Judge Pepper (the case by then having been reassigned to her) denied the Mueller defendants' motion for relief from Judge Randa's July 27, 2016

2

order. (ECF No. 133.) Judge Pepper further referred the case to this court for resolution of the pending discovery disputes. (ECF Nos. 108, 121.)

The Mueller defendants seek information and documents that the Secretary contends are privileged. The Secretary has provided a privilege log with respect to the documents sought by the Mueller defendants,. (ECF No. 101-1.) The Mueller defendants have provided the court with a list of objected-to deposition questions to which they seek answers from Visconti. (ECF No. 109 at 3-10.) Some of the deposition questions are duplicative of the document requests in that Visconti was asked to state what was redacted from certain documents.

Although not required in every case, an *in camera* review of documents "is a highly appropriate and useful means of dealing with claims of governmental privilege." *Kerr v. United States Dist. Court for Northern Dist.*, 426 U.S. 394, 406 (1976). The court found that the most efficient and expeditious means for resolving the parties' dispute was for the court to conduct an *in camera* review of the allegedly privileged documents.

The Secretary provided the court with copies of all documents identified as privileged on the most-recent privilege log. The defendants' motions to compel are now ready for resolution.

II.     **Relevant Privileges**

The Secretary asserts that many documents are not subject to disclosure due various "privileges": attorney-client, government investigative file, government

deliberative process, work product, and common interest. Relying on the same privileges, counsel for the Secretary instructed the department's investigator, Charles Visconti, not to answer various questions at his deposition.

### A. Work Product Protection

"[I]t is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Hickman v. Taylor*, 329 U.S. 495, 511 (1947). To ensure that an attorney is able to develop his case in a manner most consistent with notions of justice, an attorney's work reflected "in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways," all of which have commonly come to be called "attorney work product," are privileged against disclosure to an adverse party. *Id.; see also DOI v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) ("Work product protects 'mental processes of the attorney.'") (quoting *United States v. Nobles*, 422 U.S. 225, 238 (1975)).

> The core of attorney work product consists of "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(A)(ii). The opposing party "shouldn't be allowed to take a free ride on the other party's research, or get the inside dope on that party's strategy, or…invite the [trier of fact] to treat candid internal assessments of a party's legal vulnerabilities as admissions of guilt." *Mattenson v. Baxter Healthcare Corp.*, 438 F.3d 763, 768 (7th Cir. 2006); *see* Ronald J. Allen et al., "A Positive Theory of the Attorney-Client Privilege and the Work-Product Doctrine," 19 *J. Legal Stud*. 359, 384-86 (1990).

*Menasha Corp. v. United States DOJ*, 707 F.3d 846, 847 (7th Cir. 2013).

Only the documents or protected communications are covered under the work product protection; the underlying facts are not protected. *Patrick v. City of Chi.*, 111 F. Supp. 3d 909, 915 (N.D. Ill. 2015) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981)). However, "disclosure of some documents does not necessarily destroy work-product protection for other documents of the same character." *Appleton Papers, Inc. v. EPA*, 702 F.3d 1018, 1025 (7th Cir. 2012) (quoting 8 Wright & Miller, Federal Practice & Procedure, § 2024 and citing cases).

> [T]he doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.

*Nobles*, 422 U.S. at 238-39.

"[A] party may overcome a work product claim by showing 'it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.'" *Appleton Papers*, 702 F.3d at 1022 (quoting Fed. R. Civ. P. 26(b)(3)(A)(ii)). When assessing whether a party has waived work product protection, a court assesses "whether the 'specific assertions of privilege are reasonably consistent with the purposes for which' the privilege was created." *Appleton Papers*, 702 F.3d at 1025 (quoting *In re Sealed Case*, 676 F.2d 793, 817, 219 U.S. App. D.C. 195 (D.C. Cir. 1982)). Disclosure of certain sorts of work product is particularly discouraged. For example, disclosure of witness interviews and related documents is
5

disfavored "because it tends to reveal the attorney's mental processes." *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 622 (7th Cir. 2009) (quoting *Upjohn*, 449 U.S. at 398-99). The potential use of the material is also a relevant consideration. For example, the Court of Appeals for the Seventh Circuit has "been extremely reluctant to allow discovery of attorney work product simply as impeachment evidence." *Id.* (citing *Hauger v. Chi., Rock Island & Pac. R.R. Co.*, 216 F.2d 501, 508 (7th Cir. 1954)).

### B. Attorney-Client Privilege

"[T]he work product doctrine 'is distinct from and broader than the attorney-client privilege.'" *Appleton Papers*, 702 F.3d at 1024 (quoting *Nobles*, 422 U.S. at 238 n.11). "To determine if a communication falls within the protection of the attorney-client privilege, [courts] ask: (1) whether 'legal advice of any kind [was] sought … from a professional legal adviser in his capacity as such'; and (2) whether the communication was 'relat[ed] to that purpose' and 'made in confidence … by the client.'" *Sandra T.E.*, 600 F.3d at 618 (quoting *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997)). "The fact that the privilege is invoked to protect communications made by employees of a governmental entity rather than a private party does not change the analysis." *Id*. at 620. "[T]he attorney-client privilege protects not only the attorney-client relationship in imminent or ongoing litigation but also the broader attorney-client relationship outside the litigation context." *Id*. at 621.

### C. Common Interest Doctrine

Ordinarily, the attorney–client privilege is negated if an outsider, i.e., a person who is neither an attorney nor the attorney's client, is included in the communication. The common interest doctrine is an exception to this rule. *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815 (7th Cir. 2007). When the presence of an outsider creates a hole in a privilege, the common interest doctrine can plug that hole.

"[T]he common interest doctrine only will apply where the parties undertake a joint effort with respect to a common legal interest, and the doctrine is limited strictly to those communications made to further an ongoing enterprise." *Id.* at 815-16 (citing *Evans*, 113 F.3d at 1467). In practice, the common interest doctrine generally operates to allow the sharing of information between attorneys representing allied clients without destroying the attorney-client privilege. *See Rao v. Bd. of Trs.*, 2016 U.S. Dist. LEXIS 145298, 9 (N.D. Ill. Oct. 20, 2016) (citing *McCullough v. Fraternal Order of Police*, 304 F.R.D. 232, 239 (N.D. Ill. 2014)).

Although the common interest doctrine frequently applies to preserve claims of attorney-client privilege, courts have also found it to serve a similar role in protecting work product. *Tate & Lyle Ams., LLC v. Glatt Air Techniques, Inc.*, 2015 U.S. Dist. LEXIS 104265, 12-15 (C.D. Ill. July 31, 2015); *Whitney v. Tallgrass Beef Co. LLC*, 2015 U.S. Dist. LEXIS 78956 (N.D. Ill. June 18, 2015) (citing *Costello v. Poisella*, 291 F.R.D. 224, 231 (N.D. Ill. 2013)); *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 159 F.R.D. 307,

313 n.4 (D.D.C. 1994); *Trans-Western Petroleum, Inc. v. Wolverine Gas and Oil Corp.*, 2011 U.S. Dist. LEXIS 144744, 2011 WL 6318528, at *4 (D. Utah Dec. 15, 2011). Therefore, "attorneys facing a common litigation opponent" are permitted to share work product without fear of waiving the protection. *Costello*, 291 F.R.D. at 231 (quoting *Schachar v. American Academy of Opthalmology, Inc.*, 106 F.R.D. 187, 191 (N.D. Ill. 1985)).

### D. Deliberative Process Privilege

"The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions, by protecting open and frank discussion among those who make them within the Government." *Klamath Water Users Protective Ass'n*, 532 U.S. at 8-9 (internal citation and quotation marks omitted). "The deliberative-process privilege covers memoranda and discussions within the Executive Branch leading up to the formulation of an official position." *United States v. Zingsheim*, 384 F.3d 867, 872 (7th Cir. 2004) (citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975)). The "privilege exempts 'all papers which reflect the agency's group thinking in the process of working out its policy and determining what its law shall be.'" *King v. IRS*, 684 F.2d 517, 519 (7th Cir. 1982) (quoting *Sears, Roebuck & Co.*, 421 U.S. at 153). The privilege

> serves to assure that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism; to protect against premature disclosure of proposed policies

before they have been finally formulated or adopted; and to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action.

*Id.* (quoting *Coastal States Gas Corp. v. DOE*, 199 U.S. App. D.C. 272, 617 F.2d 854, 866 (D.C. Cir. 1980)). Although the privilege most commonly applies to inter-agency or intra-agency communications, under certain circumstances the privilege may cover communications between government agencies and outside consultants hired by the agency. *Klamath Water Users Protective Ass'n*, 532 U.S. at 10.

Like the work product privilege, the deliberative process privilege protects only documents and communications, not underlying facts, from disclosure. *Patrick*, 111 F. Supp. 3d at 915 (citing *Upjohn Co.*, 449 U.S. at 395-96).

### E. Investigative File Privilege

The law enforcement privilege, also referred to as the law enforcement investigatory privilege or the investigative file privilege, is not frequently discussed by appellate courts. It is an outgrowth of the common law executive privilege and thus serves a similar "justification rooted in the need to minimize disclosure of documents whose revelation might impair the necessary functioning of a department of the executive branch." *Dinler v. City of New York*, 607 F.3d 923, 942 fn. 18 (2d Cir. 2010) (quoting *Black v. Sheraton Corp. of Am.*, 564 F.2d 531, 541-42 (D.C. Cir. 1977)). "The interests that underlie the privilege are 'rooted in common sense as well as common law' and, like other common law privileges, the law enforcement privilege is subject to

'pragmatic adjustment to the needs of sound government.'" *Id.* (quoting *Black*, 564 F.2d at 542).

"The purpose of the privilege … is 'to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation.'" *Id.* at 940-41 (quoting *In re Dep't of Investigation*, 856 F.2d 481, 484 (2d Cir. 1988)).

The party asserting the privilege bears the burden of showing that the privilege applies to the documents or information sought. *Id.* at 944 (citing *In re Sealed Case*, 856 F.2d 268, 271-72 (D.C. Cir. 1988)).

> To meet this burden, the party asserting the law enforcement privilege must show that the documents contain information that the law enforcement privilege is intended to protect. Such protected information includes information pertaining to "law enforcement techniques and procedures," information that would undermine "the confidentiality of sources," information that would endanger "witness and law enforcement personnel [or] the privacy of individuals involved in an investigation," and information that would "otherwise … interfere[ ] with an investigation."

*Id.* at 944 (quoting *Dep't of Investigation*, 856 F.2d at 484). The privilege is not limited to ongoing investigations; information about past investigations might seriously imperil an agency's ability to conduct future investigations. *Id.* (citing *Nat'l Congress for P.R. Rights ex rel. Perez v. City of N.Y.*, 194 F.R.D. 88, 95 (S.D.N.Y. 2000)).

10
Case 2:13-cv-01302-PP   Filed 11/22/16   Page 10 of 17   Document 140

The privilege, however, is not absolute. *Dellwood Farms v. Cargill, Inc.*, 128 F.3d 1122, 1125 (7th Cir. 1997). The interest served by the privilege must be balanced against the litigant's interest in disclosure. *Id.* However, this balancing starts with the scales weighed against the litigant seeking disclosure. *Id.* ("[T]here ought to be a pretty strong presumption against lifting the privilege.")

### III. Motion to Compel Documents

The court has reviewed *in camera* the documents that the Secretary alleges are not subject to disclosure. The court did not review documents listed on the privilege log that the Secretary states have been already provided to the defendants, identified here by their Bates stamps: DOL0007063-7064; DOL0007066-7067; DOL0007166-7188; DOL0009172-9255; DOL0009261-9291; DOL0009298-9325; DOL0009350-9451; DOL0009456-9541; DOL0009544-9562; DOL0009567-9575; DOL0009578-9604; DOL0009607-9690; DOL0009693-9793; DOL0009796-9840; DOL0009955-9962; DOL0009967-9982; DOL0009984-10187; DOL0010222-10225; DOL0010230-10233; DOL0010235-10277; DOL0010288-10411; DOL0010415-10524; DOL0010613-10614; DOL0010623-10635; DOL0011420-11539; DOL0010731-10749; DOL0011015-11017; DOL0011093-11096; DOL0011141-11184.

The court rejects the defendants' arguments that the Secretary waived any protection by allegedly failing to produce adequate and complete privilege logs earlier or by not asserting a specific applicable privilege at an earlier time. Finding waiver

under such circumstances is a severe sanction that requires a showing of bad faith. *See Muro v. Target Corp.*, 250 F.R.D. 350, 359-60 (N.D. Ill. 2007) (citing *Am. Nat'l Bank & Trust Co. of Chicago v. Equitable Life Assurance Soc'y of U.S.*, 406 F.3d 867, 879 (7th Cir. 2005)). The court does not find bad faith and finds that such a sanction would be disproportionate in light of what allegedly occurred here.

As to the vast majority of documents that the court reviewed, the court finds that each is privileged or otherwise protected from disclosure for one or more of the reasons cited by the Secretary. The court will not separately discuss those documents. Only a handful of documents merit further discussion.

However, the court also notes that the description provided by the Secretary of one document on the privilege log is incomplete. DOL0011757-11770 is described as an "Email with two attachments totaling 13 pages discussing a draft voluntary compliance letter to John Michael Maier" The description should note that this document also contains a draft letter to Roger L. Mueller and Veronica S. Mueller. Notwithstanding the incomplete description, the document is still protected as work product.

### A. Communications with Bankers Trust

The Secretary asserts that the following documents are covered by the common interest doctrine:

DOL0012026: August 15, 2013 email from Kevin Long to Usha Smerdon with Glenn Loos and Neil Brozen cc'd.

DOL0012025: August 15, 2013 email from Kevin Long to Neil Brozen, Usha Smerdon, and Glenn Loos.

DOL0012023-12024: August 19, 2013 email from Kevin Long to Glenn Loos and Usha Smerdon with Lisa Majeski cc'd.

DOL0012014-12016: August 20, 2013 email from Kevin Long to Usha Smerdon and August 19, 2013 email from Kevin Long to Glenn Loos and Usha Smerdon with Lisa Majeski cc'd.

DOL0012017-12019: August 20, 2013 email from Kevin Long to Usha Smerdon and August 19, 2013 email from Kevin Long to Glenn Loos and Usha Smerdon with Lisa Majeski cc'd. (duplicate of what is contained on DOL0012014).

DOL0012020-120222: August 20, 2013 email from Kevin Long to Usha Smerdon with Lisa Majeski cc'd. Also copy of August 20, 2013 email from Kevin Long to Usha Smerdon that is contained at DOL0012014 and DOL0012017.

DOL0012027-12028: August 12, 2013 email from Kevin Long to Glenn Loos and Usha Smerdon with Lisa Majeski cc'd.

The Secretary entered into a common interest agreement with successor trustee Bankers Trust Company of South Dakota, which became effective on September 18, 2013. (ECF No. 105-15.) As reflected above, the emails were all sent by Kevin Long, an attorney representing the successor trustee, between August 12, 2013 and August 20, 2013, thus roughly a month before the common interest agreement became effective.

The defendants have not identified any authority suggesting that the common interest privilege depends upon a pre-existing written agreement. The leading cases covering the doctrine make no suggestion of such a requirement. *See, e.g., BDO Seidman,*

13

Case 2:13-cv-01302-PP    Filed 11/22/16    Page 13 of 17    Document 140

*LLP*, 492 F.3d at 816. The court finds that the lack of a written common interest agreement at the time of the disclosure does not bar the application of the doctrine.

There was a common interest between the Secretary and the successor trustee at the time the documents were disclosed. Although one lawyer represented a trustee and the other lawyer represented the Department of Labor, the lawyers each represented clients entrusted with safeguarding the plan's beneficiaries and ensuring that the defendants complied with ERISA.

The allegedly privileged communications contain Long's thoughts and opinions on the case. As such, they more comfortably fall within the scope of the work product doctrine than the attorney-client privilege. Whether covered as an attorney-client communication or work product, the communications are protected nonetheless. Long shared his work product with an attorney representing a client with a common interest. The work product was prepared in anticipation of litigation; in fact, Long offers his opinions on aspects of the case. The fact that Long's client, the successor trustee, is not a named party in this action does not negate the work-product protection otherwise afforded to Long's work. *See Pampered Chef v. Alexanian*, 737 F. Supp. 2d 958, 965 n. 5 (N.D. Ill. 2010) (citing cases).

### B. Documents Allegedly Protected by the Attorney-Client Privilege and Work Product Doctrine

DOL0009964-9965 and DOL0009292-9294 include emails from a Department of Labor investigator to a department attorney. The Secretary asserts that the documents

are protected from disclosure by the attorney-client privilege. However, legal advice was not sought in the documents and the statements contained therein are not the sort of confidential statements made in connection with the provision of legal services that the privilege exists to protect. Therefore, the documents are not privileged. They shall be disclosed within 21 days of this order.

The court also finds that portions of other documents are not protected from disclosure. Within the document identified as DOL0010281-10283, the last four lines on DOL0010282 (the email header) and all of page DOL0010283 is not protected work product or a privileged attorney-client communication. These pages shall be disclosed within 21 days of this order.

Within the document identified as DOL0010607-10611, beginning with the email header in the middle of DOL0010609 and continuing through DOL0010611, the document is not protected work product or a privileged attorney-client communication. These pages shall be disclosed within 21 days of this order.

Within the document identified as DOL0010412-10413, beginning with the email header on DOL0010413 and continuing to the end, the document is not protected work product or a privileged attorney-client communication. It shall be disclosed within 21 days of this order.

### IV. Motion to Compel Deposition Answers

The Mueller defendants asked the court to compel Visconti, an investigator employed by the Department of Labor, to answer 48 questions that he was instructed not to answer at his deposition on the basis of various privileges. (ECF No. 109 at 3-10.) Nine of these questions asked Visconti to provide the portions of documents that had been redacted. (ECF No. 109, Questions 4, 7, 9, 10, 21, 37, 40, 41, 43.) The documents referenced in the deposition are not identified by their Bates number. Thus, it is not possible to confirm if each document referenced at the deposition was encompassed within the motion to compel. Nonetheless, the court presumes that its decision on the motion to compel the production of documents moots the motion to compel an answer with respect to these questions.

As for the remaining 39 questions, the court has reviewed each one and finds that Visconti properly refused to answer on the basis of the asserted privilege or protection. Therefore, to the extent the motion is not moot, the Mueller defendants' motion to compel (ECF No. 108) is denied.

### V. Motion to Restrict Document

The Mueller defendants ask the court to seal the documents labeled as Exhibits A, B, and H to the Declaration of Douglas A. Rubel in Support of their Second Motion to Compel Discovery. (ECF No. 124.) The motion is granted as follows. Exhibits B (ECF No. 125-1) and H (ECF No. 125-2) are restricted to case participants. Exhibit A, which

16

purports to be the common interest agreement, was not electronically filed as a part of ECF Nos. 123, 124, or 125. Therefore, there is nothing actually filed on the docket requiring restriction. This common interest agreement, however, was previously filed as ECF No. 105-15.

**IT IS THEREFORE ORDERED** the Mueller defendants' motion to compel the deposition testimony of Charles Visconti (ECF No. 108) is denied. The court declines to award expenses and attorney's fees to the Secretary. *See* Fed. R. Civ. P. 37(a)(5)(B).

**IT IS FURTHER ORDERED** that the Mueller defendants' motion to compel the production of documents (ECF No. 121) is granted in part and denied in part. The court declines to apportion the reasonable expenses of the motion. *See* Fed. R. Civ. P. 37(a)(5)(C).

**IT IS FURTHER ORDERED** that the Mueller defendants' motion to restrict documents (ECF No. 124) is granted.

Your attention is directed to 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a) whereby written objections to any order herein or part thereof may be filed within 14 days of service of this order. Failure to file a timely objection with the district court shall result in a waiver of a party's right to appeal.

Dated at Milwaukee, Wisconsin this 22nd day of November, 2016.

WILLIAM E. DUFFIN
U.S. Magistrate Judge