UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| R. ALEXANDER ACOSTA,<br>Secretary of the United States<br>Department of Labor,<br><br>        Plaintiff,<br><br>        v.<br><br>VERONICA MUELLER, et al.,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. 2:13-cv-1302-PP<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**AGREED CONSENT DECREE AND ORDER**

Plaintiff R. Alexander Acosta, Secretary of the United States Department of Labor

(the "Secretary" or the "Department of Labor"), Defendants Veronica Mueller and Roger

Mueller (the "Muellers") and the "Defendant Trusts",[1] Alpha Investment Consulting

Group, LLC ("Alpha"), Omni Resources, Inc. Employee Stock Ownership Plan and Trust

(the "Omni ESOP"),[2] and Omni Resources, Inc. ("Omni")[3] (collectively, and with the

Secretary, the "Parties"), by and through their respective attorneys, have negotiated an

---

[1] The "Defendant Trusts" are the Carey V. Mueller (n/k/a Vollmers) 1996 Trust, the Roger
L. and Veronica S. Mueller 1996 Exemption Trust f/b/o Carey V. Mueller (n/k/a Vollmers),
the Craig M. Mueller 1996 Trust, the Roger L. and Veronica S. Mueller 1996 Exemption
Trust f/b/o Craig M. Mueller, the Christopher L. Mueller 1996 Trust, and the Roger L. and
Veronica S. Mueller 1996 Exemption Trust f/b/o Christopher L. Mueller.

[2] The Omni ESOP was named as a defendant herein, pursuant to Federal Rule of Civil
Procedure 19, solely to assure that complete relief can be granted.

[3] Omni voluntarily submits itself to the jurisdiction of this Court for the purpose of
agreeing and subjecting itself to the terms of this Agreed Consent Decree and Order. *See*
paragraphs II(E), III, IV, VI(G), VII and VIII below.

agreement to settle the matters in controversy in this civil action, and each consents to the entry of this Agreed Consent Decree and Order by this Court as the sole and complete memorialization of the terms of such agreement.

A.    The Secretary filed this action pursuant to his authority under Title I of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*, as amended.

B.    The Parties agree to settle this dispute on the terms and conditions hereinafter set forth and stipulate and agree to the entry of this Agreed Consent Decree and Order as a full and complete resolution of all of the civil claims, causes of action, and issues arising between them in this action without adjudication of any issue of fact or law raised in the Secretary's Complaint in this action.

**NOW THEREFORE**, in consideration of the mutual covenants set forth in this Agreed Consent Decree and Order and other valuable and sufficient consideration, the Parties have agreed as herein stated.  Accordingly, it is ORDERED, ADJUDGED AND DECREED that:

## I.    <u>JURISDICTION</u>

A.    This Court has jurisdiction over the Parties and subject matter of this action, and is empowered to provide the relief herein.

B.    Omni voluntarily submits itself to the jurisdiction of this Court for the purpose of agreeing and subjecting itself to this Agreed Consent Decree and Order.

## II.    <u>MONETARY RELIEF</u>

A.    Defendants Roger Mueller, Veronica Mueller, and the Defendant Trusts, jointly and severally, will (i) pay the Omni ESOP $1,520,681.82 (one million five hundred twenty thousand and six hundred eighty-one dollars and eighty-two cents), (ii) reduce the

balance of both Omni's obligation to repay Veronica Mueller and the Defendant Trusts and the Omni ESOP obligation to repay Omni by the amount of $3,500,000 (three million five hundred thousand dollars) and Omni's loan in the same amount to the ESOP, and (iii) pay an ERISA § 502(l) penalty in the amount of $479,318.18 (four hundred seventy-nine thousand three hundred eighteen dollars and eighteen cents) to the Department of Labor. As described in the following paragraphs, $1,500,000 (one million five hundred thousand dollars) ("First Installment") will be paid to the Omni ESOP within sixty days of entry of this Agreed Consent Decree and Order. An additional $20,681.82 (twenty thousand six hundred eighty-one dollars and eighty-two cents) ("Second Installment") will be paid to the Omni ESOP within two years of the entry of this Agreed Consent Order and Order. The payment of an ERISA § 502(l) penalty of $479,318.18 (four hundred seventy-nine thousand three hundred eighteen dollars and eighteen cents) will be made within the earlier of five days after the payment of the Second Installment or two years after the entry of the Agreed Consent Decree and Order. The Muellers' and/or the Defendant Trusts' settlement payments are, in part, in consideration for the assignments from Omni and the Omni ESOP described in paragraph VII below.

B.     As noted above, within sixty (60) days of the Court's entry of this Agreed Consent Decree and Order, Defendants Roger Mueller, Veronica Mueller, and/or the Defendant Trusts shall pay to the Omni ESOP the total sum of $1,500,000.00 (one million five hundred thousand dollars). This payment shall not be offset in any manner by any payments from Omni, the Omni ESOP, Alpha, or any other party.

C.     Within two years of the Court's entry of this Agreed Consent Order and Order, Defendants Veronica Mueller, Roger Mueller, and the Defendant Trusts shall pay the Omni ESOP the total sum of $20,681.82 (twenty thousand six hundred eighty-one

3

dollars and eighty-two cents).  This payment shall not be offset in any manner by any

payments from Omni, the Omni ESOP, Alpha, or any other party.

      **D.**     Upon payment of the First Installment in paragraph II(B) above, full

compliance with the Loan Restructuring Provisions in paragraph III below, and payment of

the Second Installment pursuant to paragraphs II(C) and (E), the Department of Labor has

determined that Defendants Roger Mueller, Veronica Mueller, and the Defendant Trusts

shall be and hereby are assessed a total penalty under ERISA § 502(l), 29 U.S.C. § 1132(l),

of $829,166.67 (eight hundred twenty-nine thousand one hundred sixty-six dollars and

sixty-seven cents).  The Department of Labor has agreed to compromise and reduce the

amount of the penalty to $479,318.18 (four hundred seventy-nine thousand three hundred

eighteen dollars and eighteen cents) (the "502(l) Penalty").  Therefore, the Secretary hereby

does and will accept, as full satisfaction of the assessed penalty, the amount of $479,318.18

(four hundred seventy-nine thousand three hundred eighteen dollars and eighteen cents) out

of the Second Installment.  Defendants Roger Mueller, Veronica Mueller, and the

Defendant Trusts waive their rights to a separate notice of assessment of the penalty under

§ 502(1), 29 U.S.C. §1132(1), the service requirement of 29 C.F.R. § 2570.83, and their

rights to seek any further reductions of or relief from the 502(l) Penalty.   Defendants

Roger Mueller, Veronica Mueller, and the Defendant Trusts shall pay the 502(l) Penalty to

the United States Department of Labor within the earlier of five (5) calendar days of

payment of the Second Installment or two (2) years after the entry of this Agreed Consent

Decree and Order.  The 502(l) Penalty must be paid by sending a certified or cashier's

check to:

U.S. Department of Labor
ERISA Civil Penalty
P.O. Box 71360
Philadelphia, PA 19176-1360.

The certified or cashier's check for the 502(l) Penalty shall be made payable to the United States Department of Labor and will reference EBSA Case No. 50-032066.  If Defendants wish to remit a check by commercial express courier, they agree to contact Soroosh Nikouei at the United States Department of Labor (Nikouei.Soroosh@dol.gov or 202-693-8486) and follow his instructions.

     **E.**     The Second Installment will be secured against the quarterly installment payments due from Omni to the Veronica Mueller and the Defendant Trusts in payment of the loan to Omni made in connection with the stock purchase transaction underlying this litigation.  In the event that the payments described in paragraphs II(C) and II(D) of this Agreed Consent Decree and Order are not made within two (2) years of the date of the entry of this Agreed Consent Decree and Order, the amount of any such nonpayment up to $500,000 of the next installment payments due from Omni to the Defendant Muellers and the Defendant Trusts shall be directed immediately by Omni to the Omni ESOP in the amount of any such nonpayment of the Second Installment and/or to the U.S. Department of Labor in the amount of any such nonpayment of the 502(l) Penalty.  These payments are secured by the ongoing payments required under the amended promissory notes and ESOP Loan and Pledge Agreement referenced in paragraph III below, and Exhibit A hereto.  To the extent that any such payments become necessary, Omni first shall remit payment to the Omni ESOP in the amount owed under paragraph II(C), plus accumulated interest under this paragraph, and then remit payment to the United States Department of Labor in the amount owed under paragraph II(D), plus accumulated interest under this paragraph.

5

**F.**     Defendants Roger Mueller, Veronica Mueller, and the Defendant Trusts shall provide to the Secretary proof of payment of the First and Second Installments and the 502(l) Penalty.  Such proof will include wire transfer confirmations of the payments and such other proof as may be requested by the Secretary.  Any proof provided under this paragraph will be sent to the Secretary's representative at the following address:

> Jeffrey Monhart
> Regional Director, Chicago Regional Office
> Employee Benefits Security Administration
> U.S. Department of Labor
> John C. Kluczynski Federal Bldg.
> 230 S. Dearborn Street, Suite 2160
> Chicago, IL 60604

**G.**     Defendant Alpha shall pay to the Omni ESOP the sum of $45,454.55 (forty-five thousand four hundred fifty-four dollars and fifty-five cents) and to pay an ERISA § 502(l) penalty in the amount of $4,545.45 (four thousand five hundred forty-five dollars and forty-five cents) to the Department of Labor.

**H.**     Within sixty (60) days of the Court's entry of this Agreed Consent Decree and Order, Defendant Alpha shall pay to the Omni ESOP the sum of $45,454.55 (forty-five thousand four hundred fifty-four dollars and fifty-five cents) (the "Alpha Settlement Amount") to fully settle the claims against Alpha in the Secretary's Complaint in this action.  This payment shall not be offset in any manner by any payments from Omni, the Omni ESOP, Roger Mueller, Veronica Mueller, the Trusts, or any other party.

**I.**     Upon payment of the Alpha Settlement Amount, Defendant Alpha shall be and hereby is assessed a penalty under ERISA § 502(l), 29 U.S.C. § 1132(l), of $8,333.33 (eight thousand three hundred and thirty-three dollars and thirty-three cents).  The parties have entered into a compromise to reduce the amount of the penalty to $4,545.45 (four thousand five hundred forty-five dollars and forty-five cents) (the "Alpha 502(l)

Penalty"). Therefore, the Secretary hereby does and will accept, as full satisfaction of the assessed penalty, the amount of $4,545.45 (four thousand five hundred forty-five dollars and forty-five cents). Defendant Alpha waives its right to a separate notice of assessment of the penalty under § 502(1), 29 U.S.C. §1132(1), and the service requirement of 29 C.F.R. § 2570.83. Defendant Alpha shall pay the Alpha 502(l) Penalty to the United States Department of Labor within five (5) calendar days of payment of the Alpha Settlement Amount to the Omni ESOP by sending a certified or cashier's check to:

> U.S. Department of Labor
> ERISA Civil Penalty
> P.O. Box 71360
> Philadelphia, PA 19176-1360.

The certified or cashier's check shall be made payable to the United States Department of Labor and will reference EBSA Case No. 50-032066.

     **J.**     Defendant Alpha shall provide to the Secretary proof of payment of the Alpha Settlement Amount and the Alpha 502(l) Penalty. Such proof will include wire transfer confirmations of the payments and such other proof as may be requested by the Secretary. Any proof provided under this paragraph will be sent to the Secretary's representative at the following address:

> Jeffrey Monhart
> Regional Director Chicago Regional Office
> Employee Benefits Security Administration
> U.S. Department of Labor
> John C. Kluczynski Federal Bldg.
> 230 S. Dearborn Street, Suite 2160
> Chicago, IL 60604.

     **K.**     Notwithstanding any other provision of this agreement, the Secretary may seek any judicial remedy available, including contempt, if the responsible Defendants fail to pay the First Installment, the Second Installment, the 502(l) Penalty, the Alpha

Settlement Amount, or the Alpha 502(l) Penalty as required herein or violate any other term of this Agreed Consent Decree and Order.

### III.    RESTRUCTURING THE LOAN

Defendants Veronica Mueller, the Defendant Trusts, and Omni and the Omni ESOP agree to restructure their respective loans and promissory notes made in connection with the December 30, 2008, stock purchase transaction such that the principal balance remaining on the loans and promissory notes shall be reduced by the sum of $3,500,000. The balance remaining owed by Omni to Defendant Veronica Mueller and the Defendant Trusts will be re-amortized and paid in approximately equal quarterly installments until paid in full. There will be no acceleration of payments on the remaining amount owed in either loan except as may otherwise later be agreed upon by the parties to the loans and promissory notes. The amended ESOP Loan and Pledge Agreement is attached hereto and made a part hereof as Exhibit A and incorporated herein by this reference. The amended promissory note between Omni and the Omni ESOP is attached hereto and made a part hereof as Exhibit B and is incorporated herein by this reference. The amended promissory note between Veronica Mueller and the Defendant Trusts and Omni is attached hereto and made a part hereof as Exhibit C.

### IV.    ESOP PARTICIPANT ACCOUNTS

A.    Within thirty (30) days of receiving the payments set forth in paragraphs II(B), (C), and (G) above, the Omni ESOP shall allocate those monies to participant accounts for participants who were allocated shares of company stock between December 30, 2008, and the date of this Agreed Consent Decree and Order. The allocation of the payments shall specifically include former participants who vested in the Omni ESOP and received a distribution of plan assets prior to the date of entry of this Agreed Consent

Decree and Order. The allocation of the payments to the participant accounts (including former participants) shall be pro rata according to the number of shares that were allocated to each participant account between December 30, 2008, to the date of entry of this Agreed Consent Decree and Order, except that neither Defendant Roger Mueller nor Defendant Veronica Mueller shall receive any allocation of payments made to the Omni ESOP under this Agreed Consent Decree and Order. These payments shall not replace or be paid in lieu of a contribution to the Omni ESOP by Omni for any plan year. Roger Mueller and Veronica Mueller and the Defendant Trusts shall not be involved in any manner and shall have no liability with respect to the allocations and other actions set forth in this paragraph.

      **B.**     Within thirty (30) days of the entry of this Agreed Consent Decree and Order, the Omni ESOP shall release to participants' accounts the shares of Omni stock necessary to account for the $3,500,000.00 loan reductions from Veronica Mueller and the Mueller Trusts to Omni and from Omni to the Omni ESOP described in paragraph III above. The allocation shall be pro rata in proportion to the number of shares that were allocated to each participant between December 30, 2008, to the date of entry of this Agreed Consent Decree and Order except that Defendant Roger Mueller and Veronica Mueller shall not receive any allocation of shares made as a result of the $3,500,000 loan reduction from Omni to the Omni ESOP made under this Agreed Consent Decree and Order. The allocation of shares shall specifically include former participants who vested in the Omni ESOP and received a distribution of plan assets prior to the date of entry of this Agreed Consent Decree and Order. Omni and the Omni ESOP may amend the plan document to allow a five-year payment schedule for the put options on the shares allocated in this paragraph. Roger Mueller and Veronica Mueller and the Defendant Trusts shall not be involved in any manner and shall have no liability with respect to the allocations and

9

other actions set forth in this paragraph.

## V.        NON-MONETARY RELIEF

**A.**        Defendants may not seek direct or indirect contribution or indemnification from each other or Omni or the Omni ESOP and waive any rights they may have to such claims against Omni or the Omni ESOP.  The Parties expressly acknowledge and agree that the assignment by Omni and/or the Omni ESOP of their certain claims set forth in paragraph VII below shall not be considered direct and/or indirect contribution or indemnification from each other or Omni, the Omni ESOP, or any other Party.

**B.**        Defendants may not assert any claims that arose or accrued on or before the date of the entry of this Agreed Consent Decree and Order under ERISA or under any other state or federal law against Omni or the Omni ESOP related to the December 30, 2008, Omni ESOP Stock Purchase Transaction underlying this litigation, including the repayment of any extensions of credit made by the Muellers, the Defendant Trusts, or Omni to the Omni ESOP that were not made.  Defendants reserve their rights to bring claims arising after the date of the entry of this Agreed Consent Decree and Order for any failure by Omni to meet its obligations as required under the terms of the Stock Purchase Agreement and Promissory Notes, as those documents are amended by this Agreed Consent Decree and Order, as well as any settlement agreements incorporated in this Agreed Consent Decree and Order.  Omni and the Omni ESOP may not assert any claims that arose on or before the date of the entry of this Agreed Consent Decree and Order under ERISA or any other state or federal law against the Defendants related to the December 30, 2008 Omni ESOP Stock Purchase Transaction underlying this litigation.  Omni and the Omni ESOP reserve their rights to bring claims arising after the date of the entry of this Agreed Consent Decree and Order for any failure by Defendants to meet their obligations under the Stock Purchase

Agreement and Promissory Notes as those documents are amended by this Agreed Consent Decree and Order.

C.      Defendants Roger Mueller and Veronica Mueller are permanently enjoined from serving as a fiduciary to any ERISA-covered employee benefit plan or engaging in any conduct that would make them a fiduciary under ERISA section 3(21), 29 U.S.C. § 1002(21).

D.      Defendant Alpha is permanently enjoined to comply with all requirements stated in the Agreement Concerning Process Requirements for Employee Stock Ownership Plan Transactions (the "Process Agreement"), attached hereto and made part hereof as Exhibit D, when it provides services to any ESOP or ESOP fiduciary.   Defendants Roger Mueller and Veronica Mueller and the Defendant Trusts are not and shall not be involved in any manner and shall have no liability or obligations with respect to Exhibit D.

## VI.     <u>RELEASES</u>

A.      This Agreed Consent Decree and Order provides full, final, and complete judicial resolution of all of the claims and causes of action alleged in the Secretary's Complaint in this action.  Notwithstanding the foregoing, nothing in this Agreed Consent Decree and Order shall be deemed to waive any claim by the Secretary relating to the obligations set forth in this Agreed Consent Decree and Order.  Furthermore, notwithstanding the foregoing, nothing in this Agreed Consent Decree and Order shall be deemed to waive any claim by any Defendant with respect to the Secretary's, Omni's and the Omni ESOP's obligations under this Agreed Consent Decree and Order.

B.      Except for the obligations set forth in this Agreed Consent Decree and Order, the Secretary and his agents, representatives, assigns, predecessors and successors in interest, acting in their official capacities, do hereby waive, release, and forever discharge

all claims, demands, actions, causes of action, liabilities, or fines (including any penalty under § 502(l) of ERISA) they may have against Defendants Roger Mueller, Veronica Mueller, the Defendant Trusts, Alpha, and their respective directors, officers, agents, attorneys (except DeWitt, Ross & Stevens, S.C., and its present or former affiliates or employees, including, without limitation, Timothy Stewart, Brian Anderson, and Sandy Swartzberg), employees, representatives, assigns, predecessors, and successors in interest based upon the allegations in the Secretary's Complaint in this action.

     **C.**    Defendants Roger Mueller, Veronica Mueller, and the Defendant Trusts, and their directors, officers, agents, attorneys, trustees, employees, representatives, assigns, and predecessors and successors in interest, do hereby release the Secretary and his officers, agents, attorneys, employees, and representatives, both in their individual and governmental capacities, from all actions, claims and demands of whatsoever nature, including those arising under the Equal Access to Justice Act or any statute, rule, or regulation, that relate in any manner to the investigations, filing, prosecution, maintenance, and settlement of the Secretary's Complaint.

     **D.**    Defendant Alpha, and its directors, officers, agents, attorneys, employees, representatives, assigns, predecessors and successors in interest, do hereby release the Secretary and his officers, agents, attorneys, employees, and representatives, both in their individual and governmental capacities, from all actions, claims and demands of whatsoever nature, including those arising under the Equal Access to Justice Act or any statute, rule, or regulation, that relate in any manner to the investigations, filing, prosecution, maintenance, and settlement of the Secretary's Complaint.

     **E.**    Except for the claims released by the Secretary in Paragraph VI(B) above, the Secretary's claims against all persons not identified in VI(B) are expressly preserved.

Nothing in this Agreed Consent Decree and Order shall preclude the Secretary from initiating or continuing any audit or investigation, or from pursuing any claims or actions, against any entities or persons (other than the claims stated against Roger Mueller, Veronica Mueller, the Defendant Trusts, and Alpha, in the Secretary's Complaint) relating to any ERISA-covered plan, except for the claims the Secretary released in Paragraph VI(B) above.  Nothing in this Consent Decree and Order resolves any claims that have been or may be asserted against Roger Mueller, Veronica Mueller, the Defendant Trusts, or Alpha by current and former participants of the Omni ESOP, or by any other person.

     **F.**     Each Party represents and warrants that he, she, or it has not assigned all or part of any claim, demand, debt, or cause of action of any kind or nature released in this Agreed Consent Decree and Order to any other person or third party prior to executing this Agreed Consent Decree and Order.

     **G**.     Roger Mueller, Veronica Mueller, the Defendant Trusts, Alpha, Omni and Omni ESOP have entered into a Settlement and Assignment Agreement and Mutual Release under which each such party has released the other pursuant to the terms thereof.

## VII.   <u>ASSIGNMENT OF CLAIMS</u>

Omni and the Omni ESOP agree to assign any rights to certain claims in connection with the December 30, 2008, Omni ESOP Stock Purchase Transaction underlying this litigation to Defendants Roger and Veronica Mueller and the Defendant Trusts.  The terms of such assignment are documented in the separate Settlement and Assignment Agreement and Mutual Release and the Assignment Agreement between Roger Mueller, Veronica Mueller, the Defendant Trusts, Omni, and the Omni ESOP.

## VIII.   <u>RETENTION OF JURISDICTION</u>

This Court shall retain jurisdiction over the Parties and subject matter of this action

for the purposes of enforcing and interpreting the terms of this Agreed Consent Decree and Order.

## IX.    COST AND EXPENSES

The Parties each shall bear their own costs, expenses, and attorneys' fees in connection with this action, the Secretary's investigation of the December 30, 2008, purchase of Omni stock by the Omni ESOP, and this Agreed Consent Decree and Order, including, but not limited to, attorneys' fees which may be available under the Equal Access to Justice Act, as amended. The Parties agree not to seek or accept indemnification from Omni or the Omni ESOP or use any assets of Omni or the Omni ESOP for any payments made or required to be made in this Agreed Consent Decree and Order or for any expenses, including attorneys' fees, associated with the negotiation, consideration, documentation, or implementation of this Agreed Consent Decree and Order.

## X.    PARTIES BOUND

By entering into this Agreed Consent Decree and Order, the Parties represent that they have read this Agreed Consent Decree and Order, been informed by counsel of the effect and purpose of this Agreed Consent Decree and Order, and agree to be bound by its terms. This Agreed Consent Decree and Order is not binding on any governmental agency other than the United States Department of Labor.

## XI.    MULTIPLE ORIGINALS

This Agreed Consent Decree and Order may be executed in counterparts, each of which shall be deemed to be an original, but all of which, taken together, shall constitute one and the same instrument. The date of execution of this Agreed Consent Decree and Order is the date on which it is signed by this Court.

## XII.    ADMISSION OF LIABILITY

Defendants Roger Mueller, Veronica Mueller, the Defendant Trusts and Defendant

Alpha neither admit nor deny the allegations in the Secretary's Complaint in this action.

### XIII.   NOTICE

If any provisions of this Agreed Consent Decree and Order require notice to Omni

and/or the Omni ESOP, such notice shall be satisfied by delivering it in writing to:

> Thomas M. Burnett
> Reinhart Boerner Van Deuren, SC
> 1000 North Water Street, Suite 1700
> P.O. Box 2965
> Milwaukee, WI 53202
> tburnett@reinhartlaw.com

If any provisions of this Agreement require notice to the Muellers and the Mueller

Trusts, such notice shall be satisfied by delivering it in writing to:

> David R. Johanson
> Hawkins Parnell Thackston & Young LLP
> 1776 Second Street
> Napa, California 94559
> Phone: (707) 299-2470
> E-mail: DJohanson@hptylaw.com

If any provisions of this Agreement require notice to Alpha, such notice shall be

satisfied by delivering it in writing to:

> Donal Demet
> Demet & Demet, LLC
> 815 N. Cass St.
> Milwaukee, WI  53202-3908
> Phone: (414) 326-3101
> E-mail: ddemet@demetlaw.com

If any provisions of this Agreement require notice to the Secretary, such notice shall

be satisfied by delivering it in writing to:

> Jeffrey Monhart, Regional Director
> Chicago Regional Office
> U.S. Department of Labor
> Employee Benefits Security Administration

John C. Kluczynski Federal Bldg.
230 S. Dearborn Street, Suite 2160
Chicago, IL 60604
Phone: (312) 353-0900
Fax (312) 353-1023
E-mail:  monhart.jeff@dol.gov

with a duplicate delivered to:

Eric Lund
Senior Trial Attorney
Plan Benefits Security Division
U.S. Department of Labor
200 Constitution Avenue, N.W.
Room N-4611
Washington, DC  20210
Phone:  (202) 693-5600
E-mail:  lund.eric@dol.gov

Delivery shall be made by e-mail or reliable overnight express courier service.  The Parties may change the designation of persons to receive notice on their behalf by notifying the other Party or Parties of the change.

## XIV.  <u>ENTRY OF ORDER</u>

This Court finds that there is no just reason to delay the entry of this Agreed Consent Decree and Order and expressly directs the entry thereof as a final Decree and Order pursuant to Fed. R. Civ. P. 54(a).

**IN WITNESS WHEREOF**, the Parties through their respective duly authorized representatives have executed this Agreed Consent Decree and Order on the date(s) set forth hereunder.

16

**IT IS SO ORDERED**

Date: December __, 2017

_____

PAMELA PEPPER
UNITED STATES DISTRICT COURT JUDGE

**FOR THE SECRETARY:**

Respectfully Submitted,

NICHOLAS C. GEALE
Acting Solicitor of Labor

CHRISTINE HERI
Regional Solicitor

G. WILLIAM SCOTT
Associate Solicitor
for Plan Benefits Security

RUBEN CHAPA
ERISA Counsel

GLENN M. LOOS
Counsel for Litigation

ERIC LUND
Senior Trial Attorney

USHA RENGACHARY
Senior Trial Attorney

ELIZABETH ARUMILLI
Senior Trial Attorney

STACEY E. ELIAS
Senior Trial Attorney
U.S. Department of Labor
Office of the Solicitor
Washington, D.C.
(202) 693-5633
lund.eric@dol.gov

MARK ISHU
Trial Attorney
U.S. Department of Labor
Office of the Solicitor
Chicago, IL

Attorneys for Plaintiff Secretary of Labor

**ROGER MUELLER**

_____

**VERONICA MUELLER**

_____

18

**FOR THE SECRETARY:**

Respectfully Submitted,

NICHOLAS C. GEALE
Acting Solicitor of Labor

CHRISTINE HERI
Regional Solicitor

G. WILLIAM SCOTT
Associate Solicitor
  for Plan Benefits Security

RUBEN CHAPA
ERISA Counsel

GLENN M. LOOS
Counsel for Litigation

USHA RENGACHARY
Senior Trial Attorney

ERIC LUND
Senior Trial Attorney

ELIZABETH ARUMILLI
Senior Trial Attorney

STACEY E. ELIAS
Senior Trial Attorney
U.S. Department of Labor
Office of the Solicitor
Washington, D.C.
(202) 693-5633
lund.eric@dol.gov

MARK ISHU
Trial Attorney
U.S. Department of Labor
Office of the Solicitor
Chicago, IL

Attorneys for Plaintiff Secretary of Labor

**ROGER MUELLER**

**VERONICA MUELLER**

THE CAREY V. MUELLER (N/K/A VOLLMERS) 1996 TRUST, THE ROGER L.
AND VERONICA S. MUELLER 1996 EXEMPTION TRUST F/B/O CAREY V.
MUELLER (N/K/A VOLLMERS), THE CRAIG M. MUELLER 1996 TRUST, THE
ROGER L. AND VERONICA S. MUELLER 1996 EXEMPTION TRUST F/B/O
CRAIG M. MUELLER, THE CHRISTOPHER L. MUELLER 1996 TRUST, AND
THE ROGER L. AND VERONICA S. MUELLER 1996 EXEMPTION TRUST
F/B/O CHRISTOPHER L. MUELLER

By: _____
      Mark Lulloff
      Not in his individual capacity but solely in
      his capacity as Trustee
      Title: Trustee


ALPHA INVESTMENT CONSULTING GROUP, LLC


By: _____
      Robert Bukowski
      Title: Managing Member


OMNI RESOURCES, INC.


By: _____
      Donald R. Cotey, Jr.
      Title: Chief Executive Officer

THE OMNI RESOURCES, INC. EMPLOYEE
STOCK OWNERSHIP PLAN AND TRUST


By: _____
      Kevin B. Kolb
      Not in his individual capacity but solely
      as an authorized officer of GreatBanc Trust Company
      Title: Trustee

19

**THE CAREY V. MUELLER (N/K/A VOLLMERS) 1996 TRUST, THE ROGER L. AND VERONICA S. MUELLER 1996 EXEMPTION TRUST F/B/O CAREY V. MUELLER (N/K/A VOLLMERS), THE CRAIG M. MUELLER 1996 TRUST, THE ROGER L. AND VERONICA S. MUELLER 1996 EXEMPTION TRUST F/B/O CRAIG M. MUELLER, THE CHRISTOPHER L. MUELLER 1996 TRUST, AND THE ROGER L. AND VERONICA S. MUELLER 1996 EXEMPTION TRUST F/B/O CHRISTOPHER L. MUELLER**

By: _____
       Mark Lulloff
       Not in his individual capacity but solely in
       his capacity as Trustee
       Title:  Trustee

**ALPHA INVESTMENT CONSULTING GROUP, LLC**

By: _____
       Robert Bukowski
       Title:  Managing Member

**OMNI RESOURCES, INC.**

By: _____
       Donald R. Cotey, Jr.
       Title:  Chief Executive Officer

**THE OMNI RESOURCES, INC. EMPLOYEE STOCK OWNERSHIP PLAN AND TRUST**

By: _____
       Kevin B. Kolb
       Not in his individual capacity but solely
       as an authorized officer of GreatBanc Trust Company
       Title: Trustee

THE CAREY V. MUELLER (N/K/A VOLLMERS) 1996 TRUST, THE ROGER L. AND VERONICA S. MUELLER 1996 EXEMPTION TRUST F/B/O CAREY V. MUELLER (N/K/A VOLLMERS), THE CRAIG M. MUELLER 1996 TRUST, THE ROGER L. AND VERONICA S. MUELLER 1996 EXEMPTION TRUST F/B/O CRAIG M. MUELLER, THE CHRISTOPHER L. MUELLER 1996 TRUST, AND THE ROGER L. AND VERONICA S. MUELLER 1996 EXEMPTION TRUST F/B/O CHRISTOPHER L. MUELLER

By: _____

      Mark Lulloff
      Not in his individual capacity but solely in
      his capacity as Trustee
      Title: Trustee


**ALPHA INVESTMENT CONSULTING GROUP, LLC**


By: _____

      Robert Bukowski
      Title: Managing Member


**OMNI RESOURCES, INC.**


By: _____

      Donald R. Cotey, Jr.
      Title: Chief Executive Officer

**THE OMNI RESOURCES, INC. EMPLOYEE STOCK OWNERSHIP PLAN AND TRUST**


By: _____

      Kevin B. Kolb
      Not in his individual capacity but solely
      as an authorized officer of GreatBanc Trust Company
      Title: Trustee

19

THE CAREY V. MUELLER (N/K/A VOLLMERS) 1996 TRUST, THE ROGER L. AND VERONICA S. MUELLER 1996 EXEMPTION TRUST F/B/O CAREY V. MUELLER (N/K/A VOLLMERS), THE CRAIG M. MUELLER 1996 TRUST, THE ROGER L. AND VERONICA S. MUELLER 1996 EXEMPTION TRUST F/B/O CRAIG M. MUELLER, THE CHRISTOPHER L. MUELLER 1996 TRUST, AND THE ROGER L. AND VERONICA S. MUELLER 1996 EXEMPTION TRUST F/B/O CHRISTOPHER L. MUELLER

By: _____

      Mark Lulloff
      Not in his individual capacity but solely in
      his capacity as Trustee
      Title:  Trustee


**ALPHA INVESTMENT CONSULTING GROUP, LLC**


By: _____

      Robert Bukowski
      Title:  Managing Member


**OMNI RESOURCES, INC.**


By: _____

      Donald R. Cotey, Jr.
      Title:  Chief Executive Officer

**THE OMNI RESOURCES, INC. EMPLOYEE STOCK OWNERSHIP PLAN AND TRUST**


By: _____

      Kevin B. Kolb
      Not in his individual capacity but solely
      as an authorized officer of GreatBanc Trust Company
      Title: Trustee


19

**Ex. A - ESOP Loan and Pledge Agreement**

## AMENDMENT TO ESOP LOAN AND PLEDGE AGREEMENT

This Amendment to ESOP Loan and Pledge Agreement (this "Agreement") is entered into this 15th day of December, 2017 by and between (a) GreatBanc Trust Company, not in its individual or corporate capacity but solely in the capacity as Trustee of the Omni Resources, Inc. Employee Stock Ownership Trust, (the "ESOP"); (b) Veronica S. Mueller and Mark Lulloff (not individually, but solely in his capacity as trustee of the Carey V. Mueller (n/k/a Vollmers) 1996 Trust Dated 11/14/96, the Craig M. Mueller 1996 Trust Dated 11/14/96, the Christopher L. Mueller 1996 Trust Dated 11/14/96, the Roger L. and Veronica S. Mueller 1996 Exemption Trust Dated 11/14/96 f/b/o Carey V. Mueller (n/k/a Vollmers), the Roger L. and Veronica S. Mueller 1996 Exemption Trust Dated 11/14/96 f/b/o Craig M. Mueller, and The Roger L. and Veronica S. Mueller 1996 Exemption Trust Dated 11/14/96 f/b/o Christopher L. Mueller) (collectively, the "Seller"); and (c) Omni Resources, Inc. (the "Company"). The spouse of Veronica S. Mueller (as seller) also enters into this Agreement to acknowledge his relinquishment of marital property rights.

The ESOP, the Seller and the Company entered into an ESOP Loan and Pledge Agreement dated as of December 30, 2008 (the "ESOP Loan and Pledge Agreement"). Under the terms of the ESOP Loan and Pledge Agreement, the Seller agreed to provide the Company a loan in the amount of $13,765,000.00 (the "Company Loan"), as evidenced by a promissory note (the "Company Note"). Under the terms of the ESOP Loan and Pledge Agreement, the Company agreed to provide the ESOP a loan in the amount of $13,765,000.00 (the "ESOP Loan"), as evidenced by a promissory Note (the "ESOP Note").

Pursuant to the terms of the Consent Decree and Order in the litigation in the United States District Court for the Eastern District of Wisconsin, styled "*R. Alexander Acosta, Secretary of Labor v. Veronica Mueller, et al.*, 2:13-cv-1302-PP," the parties wish to amend the ESOP Loan and Pledge Agreement in the following manner:

1) In accordance with Section 2.1 of the ESOP Loan and Pledge Agreement, payments of principal and interest on the ESOP Note shall be paid by the ESOP as set forth in the terms of the ESOP Note, as amended.

2) In accordance with Section 3.1 of the ESOP Loan and Pledge Agreement, payments of principal and interest on the Company Note shall be paid by the Company as set forth in the terms of the Company Note, as amended.

3) Notwithstanding the provisions herein and as outlined in the ESOP Note, as amended, there will be no acceleration of payments on the remaining amount owed on the ESOP Note except as permitted by the Consent Decree referenced above.

4) Notwithstanding the provisions herein and as outlined in the Company Note, as amended, there will be no acceleration of payments on the remaining amount owed on the Company Note except as permitted by the Consent Decree referenced above.

All other terms and conditions of the ESOP Loan and Pledge Agreement shall remain in effect.

SELLER:

_____
Veronica S. Mueller

38482552

## AMENDMENT TO ESOP LOAN AND PLEDGE AGREEMENT

This Amendment to ESOP Loan and Pledge Agreement (this "Agreement") is entered into this 15th day of December, 2017 by and between (a) GreatBanc Trust Company, not in its individual or corporate capacity but solely in the capacity as Trustee of the Omni Resources, Inc. Employee Stock Ownership Trust, (the "ESOP"); (b) Veronica S. Mueller and Mark Lulloff (not individually, but solely in his capacity as trustee of the Carey V. Mueller (n/k/a Vollmers) 1996 Trust Dated 11/14/96, the Craig M. Mueller 1996 Trust Dated 11/14/96, the Christopher L. Mueller 1996 Trust Dated 11/14/96, the Roger L. and Veronica S. Mueller 1996 Exemption Trust Dated 11/14/96 f/b/o Carey V. Mueller (n/k/a Vollmers), the Roger L. and Veronica S. Mueller 1996 Exemption Trust Dated 11/14/96 f/b/o Craig M. Mueller, and The Roger L. and Veronica S. Mueller 1996 Exemption Trust Dated 11/14/96 f/b/o Christopher L. Mueller) (collectively, the "Seller"); and (c) Omni Resources, Inc. (the "Company"). The spouse of Veronica S. Mueller (as seller) also enters into this Agreement to acknowledge his relinquishment of marital property rights.

The ESOP, the Seller and the Company entered into an ESOP Loan and Pledge Agreement dated as of December 30, 2008 (the "ESOP Loan and Pledge Agreement"). Under the terms of the ESOP Loan and Pledge Agreement, the Seller agreed to provide the Company a loan in the amount of $13,765,000.00 (the "Company Loan"), as evidenced by a promissory note (the "Company Note"). Under the terms of the ESOP Loan and Pledge Agreement, the Company agreed to provide the ESOP a loan in the amount of $13,765,000.00 (the "ESOP Loan"), as evidenced by a promissory Note (the "ESOP Note").

Pursuant to the terms of the Consent Decree and Order in the litigation in the United States District Court for the Eastern District of Wisconsin, styled "*R. Alexander Acosta, Secretary of Labor v. Veronica Mueller, et al.*, 2:13-cv-1302-PP," the parties wish to amend the ESOP Loan and Pledge Agreement in the following manner:

1) In accordance with Section 2.1 of the ESOP Loan and Pledge Agreement, payments of principal and interest on the ESOP Note shall be paid by the ESOP as set forth in the terms of the ESOP Note, as amended.

2) In accordance with Section 3.1 of the ESOP Loan and Pledge Agreement, payments of principal and interest on the Company Note shall be paid by the Company as set forth in the terms of the Company Note, as amended.

3) Notwithstanding the provisions herein and as outlined in the ESOP Note, as amended, there will be no acceleration of payments on the remaining amount owed on the ESOP Note except as permitted by the Consent Decree referenced above.

4) Notwithstanding the provisions herein and as outlined in the Company Note, as amended, there will be no acceleration of payments on the remaining amount owed on the Company Note except as permitted by the Consent Decree referenced above.

All other terms and conditions of the ESOP Loan and Pledge Agreement shall remain in effect.

SELLER:

_Veronica S. Mueller_ (signature)

Veronica S. Mueller

38482592

_Mark J. Lulloff (signature)_

Mark Lulloff (not individually, but solely in his capacity as Trustee of the Carey V. Mueller (n/k/a Vollmers) 1996 Trust Dated 11/14/96, the Craig M. Mueller 1996 Trust Dated 11/14/96, the Christopher L. Mueller 1996 Trust Dated 11/14/96, the Roger L. and Veronica S. Mueller 1996 Exemption Trust Dated 11/14/96 f/b/o Carey V. Mueller (n/k/a Vollmers), the Roger L. and Veronica S. Mueller 1996 Exemption Trust Dated 11/14/96 f/b/o Craig M. Mueller, and The Roger L. and Veronica S. Mueller 1996 Exemption Trust Dated 11/14/96 f/b/o Christopher L. Mueller)

OMNI RESOURCES, INC. EMPLOYEE STOCK OWNERSHIP TRUST

By: _____
      Kevin B. Kolb, not in his individual capacity but solely
      as an authorized officer of GreatBanc Trust Company
      Its: Independent Trustee

COMPANY
OMNI RESOURCES, INC.

By: _____
      Brent Otto
      Title: Chief Financial Officer

As spouse of Veronica S. Mueller (Seller), Roger L. Mueller executes this Agreement, not as a party to the Agreement, in his individual capacity, but solely to acknowledge his relinquishment of any marital property rights regarding sale of the Shares.

_____
Roger L. Mueller

38482552

Mark Lulloff (not individually, but solely in his capacity as Trustee of the Carey V. Mueller (n/k/a Vollmers) 1996 Trust Dated 11/14/96, the Craig M. Mueller 1996 Trust Dated 11/14/96, the Christopher L. Mueller 1996 Trust Dated 11/14/96, the Roger L. and Veronica S. Mueller 1996 Exemption Trust Dated 11/14/96 f/b/o Carey V. Mueller (n/k/a Vollmers), the Roger L. and Veronica S. Mueller 1996 Exemption Trust Dated 11/14/96 f/b/o Craig M. Mueller, and The Roger L. and Veronica S. Mueller 1996 Exemption Trust Dated 11/14/96 f/b/o Christopher L. Mueller)

OMNI RESOURCES, INC. EMPLOYEE STOCK OWNERSHIP TRUST

By: _____
      Kevin B. Kolb, not in his individual capacity but solely
      as an authorized officer of GreatBanc Trust Company
      Its:  Independent Trustee

COMPANY
OMNI RESOURCES, INC.

By: _____
      Brent Otto
      Title:  Chief Financial Officer


As spouse of Veronica S. Mueller (Seller), Roger L. Mueller executes this Agreement, not as a party to the Agreement, in his individual capacity, but solely to acknowledge his relinquishment of any marital property rights regarding sale of the Shares.


_____
Roger L. Mueller

38482552

_____

Mark Lulloff (not individually, but solely in his capacity as Trustee of the Carey V. Mueller (n/k/a Vollmers) 1996 Trust Dated 11/14/96, the Craig M. Mueller 1996 Trust Dated 11/14/96, the Christopher L. Mueller 1996 Trust Dated 11/14/96, the Roger L. and Veronica S. Mueller 1996 Exemption Trust Dated 11/14/96 f/b/o Carey V. Mueller (n/k/a Vollmers), the Roger L. and Veronica S. Mueller 1996 Exemption Trust Dated 11/14/96 f/b/o Craig M. Mueller, and The Roger L. and Veronica S. Mueller 1996 Exemption Trust Dated 11/14/96 f/b/o Christopher L. Mueller)

OMNI RESOURCES, INC. EMPLOYEE STOCK OWNERSHIP TRUST

By: _____

      Kevin B. Kolb, not in his individual capacity but solely
      as an authorized officer of GreatBanc Trust Company
      Its: Independent Trustee

COMPANY
OMNI RESOURCES, INC.

By: _____
      Brent Otto
      Title: Chief Financial Officer


As spouse of Veronica S. Mueller (Seller), Roger L. Mueller executes this Agreement, not as a party to the Agreement, in his individual capacity, but solely to acknowledge his relinquishment of any marital property rights regarding sale of the Shares.


_____

Roger L. Mueller

38482552

Mark Lulloff (not individually, but solely in his capacity as Trustee of the Carey V. Mueller (n/k/a Vollmers) 1996 Trust Dated 11/14/96, the Craig M. Mueller 1996 Trust Dated 11/14/96, the Christopher L. Mueller 1996 Trust Dated 11/14/96, the Roger L. and Veronica S. Mueller 1996 Exemption Trust Dated 11/14/96 f/b/o Carey V. Mueller (n/k/a Vollmers), the Roger L. and Veronica S. Mueller 1996 Exemption Trust Dated 11/14/96 f/b/o Craig M. Mueller, and The Roger L. and Veronica S. Mueller 1996 Exemption Trust Dated 11/14/96 f/b/o Christopher L. Mueller)

OMNI RESOURCES, INC. EMPLOYEE STOCK OWNERSHIP TRUST

By: _____
        Kevin B. Kolb, not in his individual capacity but solely
        as an authorized officer of GreatBanc Trust Company
        Its: Independent Trustee

COMPANY
OMNI RESOURCES, INC.

By: _____
        Brent Otto
        Title: Chief Financial Officer


As spouse of Veronica S. Mueller (Seller), Roger L. Mueller executes this Agreement, not as a party to the Agreement, in his individual capacity, but solely to acknowledge his relinquishment of any marital property rights regarding sale of the Shares.

_____
Roger L. Mueller

38482552

**Ex. B - Promissory Note 1 (Omni and Omni ESOP)**

# AMENDMENT #3 TO
# PROMISSORY NOTE

December 15, 2017

On December 30, 2008, the Trustee of the Omni Resources, Inc. Employee Stock Ownership Trust ("Debtor"), promised to pay to the order of Omni Resources, Inc. ("Creditor"), at Creditor's business address or such other place as the legal holder hereof may from time to time appoint, the principal sum of Thirteen Million Seven Hundred Sixty-Five Thousand and no/100 Dollars ($13,765,000.00) plus interest on the unpaid principal balance from time to time, on or before December 31, 2023, in terms set forth in writing. This written promise to pay is hereinafter referred to as the "ESOP Note."

On September 16, 2009, the parties amended the ESOP Note to make certain changes as set forth on such amendment. On March 31, 2010, the parties again amended the ESOP Note to provide for annual payments from the Debtor to the Creditor.

Pursuant to the terms of that certain Consent Decree and Order in the litigation in the United States District Court for the Eastern District of Wisconsin, styled "R. Alexander Acosta, Secretary of Labor v. Veronica Mueller, et al., 2:13-cv-1302-PP," the parties wish to amend the ESOP Note in the following manner:

1) The outstanding principal balance on the ESOP Note as of December 15, 2017 shall be reduced by three million five hundred thousand dollars ($3,500,000). Effective December 15, 2017, the outstanding principal balance on the ESOP Note is $4,181,602.01.

2) The payment due under the ESOP Note on December 31, 2017 shall be in the amount of $1,322,671.01, after which the remaining principal balance on the ESOP Note will be $3,273,398.28.

3) Beginning with the payment due under the ESOP Note on December 31, 2018, payments shall be made in approximately equal annual installments over the remaining period of the ESOP Note (ending on December 31, 2023). Interest on the outstanding principal balance of the ESOP Note shall be determined from time to time in accordance with the ESOP Note, as amended.

4) Notwithstanding the provisions herein and as outlined in the ESOP Note, there will be no acceleration of payments on the remaining amount owed on the ESOP Note except as permitted by the Consent Decree and Order referenced above.

All other terms and conditions of the ESOP Note, as amended, shall remain in effect.

DEBTOR
OMNI RESOURCES, INC. EMPLOYEE STOCK OWNERSHIP TRUST

By: _____
    Kevin B. Kolb
    Not in his individual capacity but solely
    as an authorized officer of GreatBanc Trust Company
    Its: Independent Trustee

38302678

CREDITOR
OMNI RESOURCES, INC.

By: _____
        Brent Otto
        Title:  Chief Financial Officer

38302678

**Ex. C - Promissory Note 2 (Veronica Mueller and Defendant Trusts and Omni)**

# AMENDMENT #2 TO
# PROMISSORY NOTE

December 15, 2017

On December 30, 2008, the undersigned Omni Resources, Inc. ("Debtor"), promised to pay to the order of Veronica S. Mueller and Sandy Swartzberg (the latter as Trustee of the Carey V. Mueller (n/k/a Vollmers) 1996 Trust Dated 11/14/96, the Craig M. Mueller 1996 Trust Dated 11/14/96, the Christopher L. Mueller 1996 Trust Dated 11/14/96, the Roger L. and Veronica S. Mueller 1996 Exemption Trust Dated 11/14/96 f/b/o Carey V. Mueller, the Roger L. and Veronica S. Mueller 1996 Exemption Trust Dated 11/14/96 f/b/o Craig M. Mueller and the Roger L. and Veronica S. Mueller 1996 Exemption Trust Dated 11/14/96 f/b/o Christopher L. Mueller) (collectively, "Creditor"), at Creditor's residential address(es) or such other place as the legal holder hereof may from time to time appoint, the principal sum of Thirteen Million Seven Hundred Sixty-Five Thousand and no/100 Dollars ($13,765,000.00) plus interest on the unpaid principal balance from time to time, on or before December 31, 2023, according to terms set forth in writing. This written promise to pay is hereinafter referred to as the "Omni Note."

On September 16, 2009, the parties amended the Omni Note to make certain changes as set forth on such amendment.

Pursuant to the terms of the Consent Decree and Order in the litigation in the United States District Court for the Eastern District of Wisconsin, styled "*R. Alexander Acosta, Secretary of Labor v. Veronica Mueller, et al.*, 2:13-cv-1302-PP," the parties wish to amend the Omni Note in the following manner:

1) The outstanding principal balance on the Omni Note as of December 15, 2017, shall be reduced by three million five hundred thousand dollars ($3,500,000). Effective on December 15, 2017, after this reduction, the outstanding principal balance on the Omni Note is $3,084,892.72.

2) Beginning with the quarterly payment due under the Omni Note on December 31, 2017, payments shall be made in approximately equal quarterly installments over the remaining period of the Omni Note (ending on December 31, 2023). Interest on the outstanding principal balance of the Omni Note shall be determined from time to time in accordance with the Omni Note, as amended.

3) Notwithstanding the provisions herein and as outlined in the Omni Note, there will be no acceleration of payments on the remaining amount owed on the Omni Note except to the extent permitted by the Consent Decree and Order referenced above.

All other terms and conditions of the Omni Note, as amended, shall remain in effect.

DEBTOR
OMNI RESOURCES, INC.

By: _Brent N. Otto_____

Brent Otto
Title: Chief Financial Officer

38305857

CREDITOR

By: _Veronica LaJuelle_ (signature)
Veronica Mueller

By: _____
Mark Lulloff (not individually, but solely in his capacity as Trustee of the Carey V.
Mueller (n/k/a Vollmers) 1996 Trust Dated 11/14/96, the Craig M. Mueller 1996 Trust
Dated 11/14/96, the Christopher L. Mueller 1996 Trust Dated 11/14/96, the Roger L. and
Veronica S. Mueller 1996 Exemption Trust Dated 11/14/96 f/b/o Carey V. Mueller (n/k/a
Vollmers), the Roger L. and Veronica S. Mueller 1996 Exemption Trust Dated 11/14/96
f/b/o Craig M. Mueller, and The Roger L. and Veronica S. Mueller 1996 Exemption
Trust Dated 11/14/96 f/b/o Christopher L. Mueller)

3830587

CREDITOR

By: _____
     Veronica Mueller

By:  *Mark J. Lulloff*_____
     Mark Lulloff (not individually, but solely in his capacity as Trustee of the Carey V. Mueller (n/k/a Vollmers) 1996 Trust Dated 11/14/96, the Craig M. Mueller 1996 Trust Dated 11/14/96, the Christopher L. Mueller 1996 Trust Dated 11/14/96, the Roger L. and Veronica S. Mueller 1996 Exemption Trust Dated 11/14/96 f/b/o Carey V. Mueller (n/k/a Vollmers), the Roger L. and Veronica S. Mueller 1996 Exemption Trust Dated 11/14/96 f/b/o Craig M. Mueller, and The Roger L. and Veronica S. Mueller 1996 Exemption Trust Dated 11/14/96 f/b/o Christopher L. Mueller)

38305857

**AGREEMENT CONCERNING PROCESS REQUIREMENTS FOR
EMPLOYEE STOCK OWNERSHIP PLAN TRANSACTIONS**

Alpha Investment Consulting Group, LLC ("Alpha") agrees to apply the following policies and procedures whenever Alpha serves as trustee or other fiduciary of an employee stock ownership plan ("ESOP") subject to Title I of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA") that is purchasing or selling, is contemplating purchasing or selling, or receives an offer to purchase or sell, employer securities that are not publicly traded ("Transaction").

    **A.**    **Selection and Use of valuation advisor - General.**  Alpha shall do the following:

        1.    Prudently investigate the valuation advisor's qualifications;

        2.    Take reasonable steps to determine that the valuation advisor receives complete, accurate, and current information necessary to value the plan sponsor's securities;

        3.    Contemporaneously document the steps Alpha took – including who at Alpha took those steps – to determine that the valuation advisor received complete, accurate, and current information and to ensure Alpha understood the advice of the valuation advisor; and

        4.    Prudently determine that its reliance on the valuation advisor's advice is reasonable before entering into any Transaction in reliance on the advice.

    **B.**    **Selection of valuation advisor - Conflicts of Interest.**  Alpha shall not use a valuation advisor for a Transaction that has previously performed work for any party to the Transaction other than the ESOP or its trustee, including but not limited to a

1

"preliminary valuation" for or on behalf of the plan sponsor (as distinguished from the ESOP), a committee of employees of the plan sponsor, any counterparty to the ESOP involved in the Transaction, or any other entity that is structuring the Transaction (such as an investment bank). Alpha shall not use a valuation advisor for a Transaction that has a familial or corporate relationship (such as a parent-subsidiary relationship) to any of the aforementioned persons or entities. Alpha shall obtain written confirmation from the valuation advisor selected that none of the above-referenced relations exist.

     **C.**     **Selection of valuation advisor - Process.**

     1.     In selecting a valuation advisor for a Transaction, Alpha shall prepare a written analysis addressing the following topics:

     a.     The reason for selecting the particular valuation advisor;

     b.     A list of all the valuation advisors that Alpha considered;

     c.     A discussion of the qualifications of the valuation advisors that Alpha considered;

     d.     A list of at least three references checked and discussion of the references' views on the valuation advisor;

     e.     Whether the valuation advisor was the subject of prior criminal, civil, or regulatory proceedings/investigations related to its previous valuation work and the outcome of such proceedings or investigations; and

     f.     A full explanation of the basis for concluding that Alpha's selection of the valuation advisor was prudent.

     2.     If Alpha selects a valuation advisor from a roster of valuation advisors that it has previously used, Alpha need not undertake a-new the analysis outlined above if the following conditions are satisfied:

a. Alpha previously performed the analysis described above in connection with a prior engagement of the valuation advisor;

b. The previous analysis was completed within the prior calendar year immediately preceding Alpha's selection of the valuation advisor;

c. Alpha documents in writing that it previously performed the analysis, the date(s) on which Alpha performed the analysis and the results of the analysis;

d. Alpha's files contain the valuation advisor's confirmation that the information it previously provided pursuant to item (C)(1)(e) above is still accurate.

**D. Oversight of valuation advisor – Required Analysis.** Prior to approving a Transaction, Alpha shall request that the valuation advisor document the following items in its Valuation Report[1] and, if the valuation advisor does not so document, Alpha shall prepare or require the preparation of supplemental documentation of the following items to the extent they were not documented by the valuation advisor:

1. Use of Projections: Conduct reasonable inquiry into projections given by individual(s) responsible for providing any projections reflected in the Valuation Report, such reasonable inquiry shall include:

a. Whether those individuals have or reasonably may be determined to have any conflicts of interest in regard to the ESOP including but not limited to any interest in the purchase or sale of the plan sponsor's stock being considered;

b. Whether those individuals serve as agents or employees of persons with such conflicts, and the precise nature of any such conflicts; and

---

[1] All references to the term "Valuation Report" refer to the valuation advisor's report on which Alpha relies prior to the Transaction in deciding whether to approve or reject the Transaction.

3

        c.      How Alpha and the valuation advisor considered such conflicts in determining the value of the plan sponsor's securities.

        2.      An opinion as to the reasonableness of any projections considered in connection with the Transaction that explains in writing why and to what extent the projections are or are not reasonable. At a minimum, the analysis shall consider how the projections compare to, and whether they are reasonable in light of, the plan sponsor's five-year historical averages and/or medians and the five-year historical averages and/or medians of a group of comparable public companies (if any exist) for the following metrics, unless five-year data are unavailable (in which case, the analysis shall use averages extending as far back as possible):

        a.      Return on assets;

        b.      Return on equity;

        c.      EBIT and EBITDA margins;

        d.      Ratio of capital expenditures to sales;

        e.      Revenue growth rate; and

        f.      Ratio of free cash flows (of the enterprise) to sales.

        3.      If it is determined that any of these metrics should be disregarded in assessing the reasonableness of the projections, document in writing both the calculations of the metric (unless calculation is impossible) and the basis for the conclusion that the metric should be disregarded.  The use of additional metrics to evaluate the reasonableness of projections other than those listed in section (D) (2) (a)-(f) above is not precluded as long as the appropriateness of those metrics is documented in writing.

        4.      If comparable companies are used for any part of a valuation - whether as part of a guideline company method of valuation, to gauge the reasonableness

4

of projections, or for any other purpose, explain in writing the basis for concluding that the comparable companies are actually comparable to the plan sponsor being valued, including on the basis of size, customer concentration (if such information is publicly available), and volatility of earnings. If a guideline company analysis is performed, explain in writing any discounts applied to the multiples selected, and if no discount is applied to any given multiple, explain in detail the reasons.

5.      If the plan sponsor is projected to meet or exceed its historical performance or the historical performance of the group of comparable public companies on any of the metrics described in paragraph (D) (2) above, document in writing all material assumptions supporting such projections and why those assumptions are reasonable.

6.      To the extent that Alpha or its valuation advisor considers any of the projections provided by the plan sponsor to be unreasonable, document in writing all adjustments made to the projections.

7.      If adjustments are applied to the plan sponsor's historical or projected financial metrics in a valuation analysis, determine and explain in writing why such adjustments are reasonable.

8.      Describe the risks facing the plan sponsor that could cause the plan sponsor's financial performance to fall materially below the projections relied upon by the valuation advisor.

9.      If greater weight is assigned to some valuation methods than to others, explain in writing the weighting assigned to each valuation method and the basis for the weightings assigned.

10.     Consider, as appropriate, how the ESOP document provisions regarding stock distributions, the duration of the ESOP loan, and the age and tenure of the

5

ESOP participants, may affect the plan sponsor's prospective repurchase obligation, the prudence of the Transaction or the fair market value of the stock.

11.      Analyze and document in writing:

a.      Whether the plan sponsor will be able to service the debt taken on in connection with the Transaction (including the ability to service the debt in the event that the plan sponsor fails to meet the projections relied upon in valuing the stock);

b.      Whether the Transaction is fair to the ESOP participants from a financial point of view;

c.      Whether the Transaction is fair to the ESOP participants relative to all the other parties to the Transaction;

d.      Whether the terms of the financing of the Transaction are market-based, commercially reasonable, and in the best interests of the ESOP participants;

e.      Whether both seller financing and financial institution financing was considered and whether the loans sought from financial institutions were within the amounts the financial institution was willing to loan;

f.      Whether the terms of any loan the ESOP receives in connection with the Transaction are as favorable as the terms of any loans between the plan sponsor and any executive of the plan sponsor made within the two years preceding the Transaction; and

g.      The financial impact of the Transaction on the plan sponsor, and document in writing the factors considered in such analysis and conclusions drawn therefrom.

12.      Explain any material differences between the present valuation and the most recent prior valuation of the plan sponsor performed within the past 24 months by

6

any valuation firm for any purpose (if any exist).

#### E. Financial Statements.

1.      Alpha shall request that the plan sponsor provide Alpha and its valuation advisor with unqualified audited financial statements for the preceding five fiscal years, unless unqualified audited financial statements extending back five years are unavailable (in which case, Alpha shall request unqualified audited financial statements extending as far back as possible).

2.      If the plan sponsor provides to Alpha or its valuation advisor unaudited or qualified audited financial statements for any of the preceding five fiscal years (including interim financial statements that update or supplement the last available unqualified audited financial statement), Alpha shall determine whether it is prudent to rely on these financial statements notwithstanding the risk posed by using unaudited or qualified audited financial statements.

3.      If Alpha proceeds with the Transaction notwithstanding the lack of unqualified audited financial statements (including interim financial statements that update or supplement the last available unqualified audited financial statement), Alpha shall document the basis for Alpha's belief that it is prudent to rely on the financial statements, and explain in writing how Alpha accounted for any risk posed by using financial statements other than unqualified audited financial statements. If Alpha does not believe that it can reasonably conclude that it would be prudent to rely on the financial statements used in the Valuation Report, Alpha shall not proceed with the Transaction. While Alpha need not audit the financial statements themselves, it must carefully consider the reliability of those statements in the manner set forth herein.

4.      Alpha may approve a Transaction notwithstanding the lack of

7

unqualified audited financial statements (including interim financial statements that update or supplement the last unqualified audited financial statement) only if the stock purchase agreement includes a provision requiring the selling or purchasing shareholder(s) who is(are) an officer, manager, or member of the board of directors of the plan sponsor to compensate the ESOP for any losses or other harms caused by or related to financial statements that did not accurately reflect the plan sponsor's financial condition.

F. **Fiduciary Review Process - General**. In connection with any Transaction, Alpha agrees to do the following:

1. Take reasonable steps necessary to determine the prudence of relying on the plan sponsor's financial statements provided to the valuation advisor, as set out more fully in paragraph E above;

2. Critically assess the reasonableness of all projections (particularly management projections), and if the Valuation Report does not document in writing the reasonableness of such projections to Alpha's satisfaction, Alpha shall prepare supplemental documentation explaining why and to what extent the projections are or are not reasonable;

3. If Alpha believes the projections are unreasonable, Alpha shall ask the valuation advisor to account for the unreasonable projections in its valuation, request new and reasonable projections from management, or reject the Transaction. Alpha must document the basis for its decision.

4. Ensure that the information the valuation advisor obtains from the plan sponsor and purchasing or selling shareholder(s) includes the following, to the extent it exists:

a. All prior attempts by the purchasing or selling shareholder(s)

8

to purchase or sell their stock in the plan sponsor within the proceeding two (2) years;

    b.  All prior defaults within the past five years by the plan sponsor under any lending or financing agreement;

    c.  All management letters provided to the plan sponsor by its accountants within the past five years; and

    d.  All information related to a valuation of the plan sponsor provided to the Internal Revenue Service within the past five years.

    **G.  Fiduciary Review Process - Documentation of Valuation Analysis.**
Alpha shall document in writing its analysis of the Valuation Report relating to a Transaction. Alpha's documentation shall specifically address each of the following topics and shall include Alpha's conclusions regarding the Valuation Report's treatment of each topic and explain in writing the basis for its conclusions:

    1.  Marketability discounts;

    2.  Minority interests and control premiums;

    3.  Projections of the plan sponsor's future financial performance and the reasonableness or unreasonableness of such projections, including, if applicable, the basis for assuming that the plan sponsor's future financial performance will meet or exceed historical performance or the expected performance of the relevant industry generally;

    4.  Analysis of the plan sponsor's strengths and weaknesses, which may include, as appropriate, personnel, plant and equipment, capacity, research and development, marketing strategy, business planning, financial condition, and any other factors that reasonably could be expected to affect future performance;

    5.  Specific discount rates chosen, including whether any weighted average cost of capital used by the valuation advisor was based on the plan sponsor's actual

9

capital structure or that of the relevant industry and why the chosen capital structure weighting was reasonable;

6. All adjustments to the plan sponsor's historical financial statements;

7. Consistency of the general economic and industry-specific narrative in the Valuation Report with the quantitative aspects of the Valuation Report;

8. Reliability and timeliness of the historical financial data considered, including a discussion of whether the financial statements used by the valuation advisor were the subject of unqualified audit opinions, and if not, why it would nevertheless be prudent to rely on them;

9. The comparability of the companies chosen as part of any analysis based on the plan sponsor's comparable companies;

10. Material assumptions underlying the Valuation Report and all testing and analysis of these assumptions;

11. Where the Valuation Report made choices between averages, medians, and outliers (e.g., in determining the multiple(s) used under the guideline company method of valuation), the reasons for the choices;

12. Treatment of corporate debt;

13. Whether the methodologies employed were standard and accepted methodologies and the basis for any departures from standard and accepted methodologies;

14. The plan sponsor's ability to service all debt or liabilities to be taken on in connection with the Transaction;

15. The Transaction's reasonably foreseeable risks as of the date of the Transaction; and

16. All other material considerations or variables that could have a

10

significant effect on the price of the plan sponsor's securities.

**H.     Fiduciary Review Process - Reliance on Valuation Report.**

1.     Alpha, through its employees who are primarily responsible for the proposed Transaction, including all employees who participated in decisions on whether to proceed with the Transaction or the price of the Transaction, shall do the following, and document in writing its work with respect to each:

a.     Read and understand the Valuation Report;

b.     Identify and question the valuation report's underlying assumptions;

c.     Make reasonable inquiry as to whether the information in the Valuation Report is materially consistent with information in Alpha's possession;

d.     Analyze whether the Valuation Report's conclusions are consistent with the data and analysis; and

e.     Analyze whether the Valuation Report is internally consistent in material aspects.

2.     Alpha shall document in writing the following:  (a) the identities of its employees who were primarily responsible for the proposed Transaction, including all employees who participated in decisions on whether to proceed with the Transaction or the price of the Transaction; (b) all material points on which such employee disagreed and why; and (c) whether all such employees concluded or expressed the belief prior to Alpha's approval of the Transaction that the Valuation Report's conclusions were inconsistent with the data and analysis therein or that the Valuation Report was internally inconsistent in material aspects.

3.     If the employees who were primarily responsible for the Transaction,

11

including all employees who participated in decisions on whether to proceed with the Transaction or the price of the Transaction, believe that the Valuation Report's conclusions are not consistent with the data and analysis or that the Valuation Report is internally inconsistent in material respects, Alpha shall not proceed with the Transaction.

4.     Alpha shall independently determine whether a Fairness Opinion is required and, if so, shall not proceed without one.

**I.     Preservation of Documents.**  In connection with any Transaction approved by Alpha, Alpha will create a Transaction folder and preserve for at least six (6) years the following:

1.     The full name, business address, business telephone number and email address at the time of Alpha's consideration of the Transaction of each employee who was primarily responsible for the Transaction, including any employee who participated in decisions on whether to proceed with the Transaction or the price of the Transaction, and any other Alpha employee who made any material decision(s) on behalf of Alpha in connection with the Transaction;

2.     All relevant notes and records created by Alpha in connection with its consideration of the Transaction, including all documentation required by this Consent Order and Judgment;

3.     The vote (yes or no) of each employee of Alpha who voted on the proposed transaction and a signed certification by each voting employee, in his or her representative capacity, and all other Alpha employees who made any material decision(s) on behalf of Alpha in connection with the proposed Transaction that they have read the valuation report, identified its underlying assumptions, and considered the reasonableness of the valuation report's assumptions and conclusions;

12

4. All relevant documents Alpha and the employees identified in paragraph (I)(1) above relied on in making the decisions;

5. All relevant electronic or other written communications Alpha and the employees identified in paragraph (I)(1) above had with service providers (including any valuation advisor), the plan sponsor, any non-ESOP counterparties, and any advisors retained by the plan sponsor or non-ESOP counterparties;

**J.     Debt and Fair Market Value.** The principal amount of the debt financing the Transaction, irrespective of the interest rate, cannot exceed the plan sponsor's securities' fair market value.  Accordingly, Alpha shall not cause an ESOP to engage in a leveraged stock purchase Transaction in which the principal amount of the debt financing the Transaction exceeds the fair market value of the plan sponsor's securities acquired with that debt, irrespective of the interest rate or other terms of the debt used to finance the Transaction.

**K.     Control.**  If Alpha approves a Transaction in which the ESOP cedes any degree of control to which it would otherwise be entitled based on its ownership interest, including but not limited to the unencumbered ability to vote its shares (for example, by electing members of the board of directors), Alpha must document all consideration received in exchange for such limitation on the ESOP's control (or how the limitation on control is otherwise reflected in the purchase price) and why it is fair to the ESOP.  If Alpha approves a Transaction in which the ESOP pays a control premium, Alpha must document why it believes that the ESOP is obtaining voting control and control in fact and identify all limitations on such control as well as the specific amount of consideration the ESOP received for such limitation(s).

**L.     Consideration of Claw-Back.**  In evaluating a proposed Transaction, Alpha

13

shall consider whether it is appropriate to request a claw-back arrangement or other purchase price adjustment(s) to protect the ESOP against the possibility of adverse consequences in the event of significant corporate events or changed circumstances. Alpha shall document in writing its consideration of the appropriateness of a claw-back or other purchase price adjustment(s).

**M.** **Other Professionals.** Alpha may, consistent with its fiduciary responsibilities under ERISA, employ, or delegate fiduciary authority to qualified professional service providers to aid Alpha in the exercise of its powers, duties, and responsibilities in the Transaction as long as it is prudent to do so.

14